In the Matter of the WELFARE OF
L.Z., C.R.P. and S.L.P.

Nos. C7–85–1357, C7–85–1665
and C9–85–1666.

Supreme Court of Minnesota.

Nov. 21, 1986.

Beverly J. Wolfe, Ross Quaintance, Minneapolis, for appellant.

William R. Kennedy, David Knutson, Philip D. Bush, Minneapolis, for respondent.

SIMONETT, Justice.

This appeal raises issues of what constitutes the juvenile offense of habitual truancy[1] and how it may be proved. The court of appeals ruled school attendance records were inadmissible to prove the offense and

---

1. Minn.Stat. § 260.015, subd. 19 (1984), reads: "Habitual truant" means a child under the age of 16 years absenting himself from attendance at school without lawful excuse for seven school days if the child is in elementary school or for one or more class periods on seven school days if the child is in middle school, junior high school, or high school.

reversed the determinations of truancy in three cases for insufficiency of the evidence. We reverse the court of appeals in two of the juvenile cases and affirm in the third case.

Respondent L.Z., age 15, was found by the trial court to be a habitual truant and fined $25. Using the school attendance records, which were received in evidence over objection, Blanch Gravlun, the school attendance clerk for Minnetonka High School, testified that while L.Z. had many excused absences, she was also absent 17 days during the fall of 1984 without lawful excuse. Testifying in her own defense, L.Z. said she had been sick (she claimed a doctor diagnosed mononucleosis in mid-November). She said "probably most" of the days her mother had excused her, but the school refused to accept the excuses because "I'm gone a lot, or like if I miss the bus or something they tell me that it's not all right for my mom to excuse me." L.Z. admitted she worked part time 5 days a week throughout the fall and continuing through the time of the hearing. In rebuttal, Ms. Gravlun testified that if an excuse is accepted it is so noted on the student's record. She said she never disregarded notes from L.Z.'s mother; several times she called the mother for verification of the excuse and the mother indicated the child was not excused. On three of the truant days and on one other occasion, said Ms. Gravlun, L.Z. was referred to the principal because of her many absences. Neither parent testified but L.Z.'s father was present during the hearing.

Respondent C.R.P., age 12, was also adjudged a habitual truant. He was placed on probation, required to attend school, and, with his family, to undergo counseling. Again testifying from school attendance records admitted over objection, Florence Finnicum, social worker at Jefferson Elementary School, stated C.R.P. had been absent 3 days in the fall of 1984 and in each instance the father, when called by phone, said the boy should have been in school. The social worker further stated the boy was absent from January 15, 1985, through February 7, 1985, and no excuse was received from either parent during this time. On January 15 C.R.P. was seen off the school premises by the social worker, and the father, when contacted, said the boy should have been in school. Apparently at this time the boy had moved to live with his mother, who lived in the attendance district for the Waite Park School. C.R.P. remained enrolled at Jefferson until he was officially transferred to Waite Park on February 7, 1985. During this time there was no showing he attended school at Waite Park. After January 16 when the school spoke with the mother and learned the boy had moved, it did not attempt to contact either the father or the mother about the boy's absence. (In late January, Ms. Finnicum filed a neglect charge against the parents.) C.R.P. offered no evidence in his defense, but his counsel contended the boy could not be found a truant because the state had not shown it was the boy's fault in not attending school after moving to a new attendance area.

Respondent S.L.P., age 10 (and C.R.P.'s sister), was adjudged a habitual truant for her absences from the Waite Park Intermediate School. She received the same sentence as her brother. Dale Heffron, a school social worker, testified, on the basis of the child's school attendance card received in evidence over objection, that S.L.P. was absent 18 days. On 2 of those days, the parent was not reached. On 2 days the parent wrote a note saying the child overslept. On 4 other days, S.L.P. had been suspended from riding the school bus. On 8 days, the mother called or wrote a note saying her daughter (who lived 8 miles from the school) had missed the bus. On the remaining 2 days, the child missed school because the mother was in the process of transferring to a shelter home. The state called S.L.P.'s mother as a witness, but, because she might have incriminated herself in a pending dependency and neglect proceeding, she did not testify. Neither did the child testify. The court excluded the 4 days S.L.P. was absent because of her bus suspension, but found she was a truant for the other 14 days.

On appeal to the court of appeals, the determinations of truancy in all three cases were reversed. The court of appeals held the state had the burden of proving the child was at "fault" in being absent from school; that the school attendance records, at least to the extent they reflected evaluations of the student's excuses for being absent, denied the child the right to confront the witnesses who made those evaluations; and that the evidence was insufficient to prove habitual truancy as a matter of law. *Matter of Welfare of L.Z.*, 380 N.W.2d 898 (Minn.App.1986). We granted the state's motion to stay implementation of the court of appeals' decision and granted the state's petition for further review.

Three main issues are presented: (1) What are the elements of the offense of habitual truancy? Specifically, must the student "be at fault" in not attending school? (2) Are the school attendance records admissible to prove a case of truancy over an objection based on the confrontation clause? and (3) In each of the three cases, was the evidence sufficient to prove truancy beyond a reasonable doubt?

### I.

■ Under Minn.Stat. § 260.015, subd. 19 (1984) (see footnote 1), a habitual truant is a child *"absenting himself* from attendance at school without lawful excuse" for the requisite number of days. (Emphasis added.)

The statute does not speak of the child being simply physically absent without lawful excuse but instead speaks of truancy which is "habitual" and of the child "absenting himself," which implies volitional conduct on the part of the child for which the child is responsible. To argue otherwise would be to say that a child who must obey a parent's wrongful command to stay home from school is a truant. *Cf. In Interest of C.S.*, 382 N.W.2d 381, 385–86 (N.D. 1986) (child who stays out of school pursuant to a parent's wishes is not a truant). In other words, to be a truant, we hold the child must (1) be absent from school for the requisite number of days, (2) without a

lawful excuse, and (3) by his or her own choice or neglect. The classic case of truancy is the child sent to school by his parents, who then skips. A lawful excuse, as defined under the compulsory attendance law, is an excuse applied for by a parent, guardian or other person "having control" of the child. If "demonstrated to the satisfaction" of the school, an excuse will be granted for a child's bodily or mental condition that prevents attendance, or for religious instruction, or if the child has completed the requisite schooling through the 10th grade. *See* Minn.Stat. § 120.10, subd. 3 (1984).

The state argues, however, it is extremely difficult to prove why a child is absent from school, *i.e.*, to prove the elements of "absenting himself" and no lawful excuse. Parents cannot be required to testify if their testimony might later be used against them in a dependency and neglect proceeding. Nor can the child be required to testify, and parents cannot be made to testify about privileged communications from the child. Thus the state contends it should be entitled to use school attendance records to make out its case, and that the court of appeals erred in refusing to permit their use.

### II.

■ In all three cases, the child's attendance record was received in evidence over an objection that receipt of the record violated the child's right to confront opposing witnesses. The sixth amendment to the federal constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." Our state constitution, article 1, section 6, says the same.

The parties spend a great deal of time arguing whether habitual truancy is a criminal offense so that the constitutional right of confrontation attaches. Does a child cited for truancy risk the kind of loss of liberty that is involved in a juvenile delinquency proceeding where the confrontation clause applies? *See Allen v. Illinois*, —— U.S. ——, 106 S.Ct. 2988, 2994, 92 L.Ed.2d

296 (1986); *see also In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). While we have doubts the confrontation clause is constitutionally mandated here,[2] we need not decide the question. The issue is settled for us by the Minnesota Rules for Juvenile Courts. Rule 27.04 provides: "The court shall admit only such evidence as would be admissible in a criminal trial." So, even if a habitual truancy petty matter is not a "criminal" offense, under our rules we must treat it as if it were and apply the confrontation clause.

■ Hearsay evidence may avoid the confrontation clause if within a "firmly rooted" exception to the hearsay rule, and if the hearsay is both necessary and reliable. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *State v. Hansen*, 312 N.W.2d 96, 102 (Minn.1981). Here the state claims the school attendance records come within the business records exceptions of Minn.R. Evid. 803(6) and should satisfy the confrontation clause.

■ The necessity for the business records exception stems from the inconvenience and marginal utility of requiring all participants in the recordmaking process to testify.[3] Respondents argue that the necessity requirement requires also a showing the declarant is unavailable to testify, citing *Ohio v. Roberts*. We disagree. *Ohio v. Roberts* states that for prior trial testimony to be admitted, it is generally necessary to show the declarant's unavailability; however, as the United States Supreme Court has recently stated, there is no general requirement of unavailability applicable to all hearsay exceptions. *See United States v. Inadi*, — U.S. —, 106 S.Ct. 1121, 1126, 89 L.Ed.2d 390 (1986). We think the necessity for admitting the school attendance records is amply established here. To require every teacher, administrator, or social worker who dealt with the child to appear in person to verify what the school record says would be unduly burdensome and disruptive of the operation of the school. These people are needed in the schoolhouse, not the courthouse. *See also United States v. Kepling-*

---

2. Minn.Stat. § 260.194, subd. 1(h) (1984), is quite open ended and allows a court to "[r]equire the child [truant] to perform any other activities or participate in any other treatment programs deemed appropriate by the court." Consequently, respondents say children are sent to involuntary work camps. On the other hand, delinquents may be sent to a county home school and have custody transferred to the commissioner of corrections, dispositions not provided for truants. *See, generally, Matter of Welfare of L.J.C.*, 367 N.W.2d 101 (Minn.App. 1985). Recently, in *Schall v. Martin*, 467 U.S. 253, 265, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984), the United States Supreme Court held a statute providing for pretrial detention of juveniles did not violate the due process clause because it served a legitimate state objective of protecting the community from crime and it did not necessarily punish juveniles. "[J]uveniles, unlike adults," said the Court, "are always in some form of custody. * * * Children by definition are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its role of *parens patriae*." *Id.*

The justice system, of course, should protect children from unfair and erroneous charges of truancy, and, in so doing, it teaches the child ours is a government of law. Yet it is also worth remembering the purpose of the truancy laws is simply to assure children get the education they need. Excessive legal skirmishing tends to obscure this purpose. We wonder, for example, if either the child or the justice system profits when, as happened in one of the cases here, respondent moves to dismiss on the grounds that the state had failed to prove the child was not over the age of 16 even though the child's age was not in dispute and appeared elsewhere in the court records.

3. As one evidence treatise explains:

The business record is often a composite of information gleaned from many sources, and its receipt in evidence obviates the need to take the court's time to hear testimony from all who participated in making it, and spares the working hours of those engaged in business, who would otherwise spend time in court to give evidence on the finest and narrowest of points. Equally significant from the standpoint of necessity is the fact that the persons who participate in business transactions are likely to be involved in so many that even if their attendance is required, they are often able to do little more than to repeat whatever they recall from examining the record itself.

D. Louisell & C. Mueller, *Federal Evidence* § 446 at 646–47 (1980).

*er,* 572 F.Supp. 1068, 1071 (N.D.Ill.1983); *People v. Kirtdoll,* 391 Mich. 370, 217 N.W.2d 37, 48 (1974).

The second requirement for admission of business records is that they be reliable. Business records are considered reliable because their regularity produces habits of precision in the recordmaker, the business relies on the records in its day-to-day operations, and the recordmaker has a duty to make accurate records as part of his job. 4 J. Weinstein and M. Berger, *Weinstein's Evidence* § 803(6)[01] (1985). "Properly administered the business records and public records exceptions would seem to be among the safest of the hearsay exceptions." *Ohio v. Roberts,* 448 U.S. 56, 66 n. 8, 100 S.Ct. 2531, 2539, n. 8, 65 L.Ed.2d 597 (1980) *quoting* Comment, 30 La.L.Rev. 651, 668 (1970). Here, to the extent the school attendance records show a child was not at school, the records are ordinarily reliable. The records simply reflect the teacher's observations in the classroom that the child was not there. Nor would the fact of absence be very susceptible to cross-examination if the teacher were called as a witness. Indeed, it is unlikely a teacher could, independently of the record, recall months later if a particular child was or was not in the classroom on a particular day. We hold, therefore, assuming a proper foundation is laid (*i.e.,* the record of absences was prepared in a trustworthy manner), the school attendance records are admissible over hearsay and confrontation clause objections to establish school absences.

More troublesome, however, is whether school attendance records are sufficiently reliable to show the child was absenting himself and was absent without a lawful excuse. The absence of a lawful excuse, for example, may involve a judgment of school personnel on the validity of a proffered excuse. By statute, school officials are required in the regular course of their business to enter their judgments about the lawfulness of a child's absences in the attendance records. Minn.Stat. § 120.10, subd. 4 (1984) (clerk shall keep a record of excuses); Minn.Stat. § 120.11 (1984) (clerk or principal required to report names of unexcused children to superintendent). Furthermore, the school relies upon the accuracy of these recorded judgments for school funding purposes. Minn.Stat. §§ 121.49; 124.17, subd. 2; and 124A.03, subds. 3 and 4 (1984). These legal responsibilities would seem to assure the accuracy and impartiality of information contained in the school attendance records on whether absences were properly excused or not excused. Respondents argue, however, that the judgmental aspects of the attendance records are accusatory in nature and, therefore, lack the requisite trustworthiness of business records. Undeniably, the records are prepared, at least in part, for use in a possible truancy court proceeding. In New York, one court has held school attendance records lack requisite reliability for admission as business records, *Matter of George C.,* 91 Misc.2d 875, 398 N.Y.S.2d 936 (1977), while another has held the records are admissible, *Matter of Kelly V.,* 94 Misc.2d 172, 405 N.Y.S.2d 207, 210 (1978). *See also Simmons v. State,* 175 Ind.App. 333, 371 N.E.2d 1316, 1320–21 (1978) (attendance records admissible where attendance clerk testified regarding the attendance procedure utilized by the school).

We believe the problem should be resolved as follows. A proper foundation for admission of the school attendance records should include the testimony of the attendance clerk, social worker, or principal (or other qualified person) that the records were prepared in accordance with clear, adequate, and reliable policies and procedures consistent with the law defining habitual truancy.[4] If the proper foundation

---

4. For example, Dale Heffron, social worker at Waite Park Intermediate School, testified to the practice and policy of his school. The teacher each day sends a list of student absentees to the attendance clerk, who notes the absences on a card. The clerk then calls each home for which the school has a phone number and, if the parent (or guardian) answers, reports the child's absence and writes on the card what the parent says. The school asks the child to bring an

is laid, the records are admissible to show (a) the child was absent on a particular day; (b) what excuse, if any, was offered by the parent; and (c) the fact no excuse was received from the parent or guardian for an absence, *cf.* Minn.R.Evid. 803(7) (absence of entry on record). We believe this data is ordinarily reliable; it involves simply the receipt of certain facts, not any judgments based thereon. (Conceivably, the school might fabricate the information received, but aside from the fact this is highly unlikely, it goes only to the foundation for admission of the entries, not any evaluative content.)[5] If an excuse received by the school is evaluated, *e.g.*, the school rejects a facially valid excuse, the judgmental nature of this hearsay lacks sufficient reliability for admission and the judgmental data is inadmissible. The child, in such an instance, must be allowed to confront the person making the adverse judgment.

### III.

Respondents each argue the evidence is insufficient to prove their truancy beyond a reasonable doubt. Before examining the specific facts of each case, it will be helpful to make some general observations on the proof required to show (1) the absence was without lawful excuse, and (2) the absence was a result of the child's own neglect or choice.

### A.

The responsibility for providing a lawful excuse for a child is not on the school but on the parent. Minn.Stat. § 120.10 (1984). If the parent provides no excuse or an insufficient excuse, the absence for that day is unexcused. School attendance records, for which a proper foundation has been laid, may be received in evidence to show no parental excuse was provided or a parental excuse insufficient as a lawful excuse was provided; this evidence permits an inference that the child's absence was, beyond a reasonable doubt, without lawful excuse. At this juncture it would be incumbent on the child to introduce evidence to rebut the inference.

The state must also prove the child was "absenting himself." A school attendance record showing the child was absent with no lawful excuse received from the parent is not admissible against the child for the truth of the matter asserted in the excuse and, therefore, does not permit an inference, one way or the other, whether the absence was due to the child's own choice or neglect. Something more is needed for the state to meet its burden of proof on this element.

We start with the proposition the child should be in school and the child knows this. The child also knows that

---

excuse note from the parent, but the school accepts excuses by phone call. The school accepts excuses for being sick, visiting a doctor or mental health professional, religious holidays, or family emergencies. Thus, if the parent over the phone says the child is sick, the child's absence is excused. Missing a bus if the bus was at fault is an acceptable excuse. On the other hand, if the parent says the child overslept or just missed the bus, excuses which are not acceptable, the child is truant.

After three unacceptable absences, the principal writes a letter to the parent. After seven or eight unacceptable absences, the school attorney sends a truancy warning letter. After 11 or 12 unexcused absences, the school considers referral to juvenile court.

**5.** Respondents also argue business records may not be used to prove an essential element of an offense, citing *State v. Matousek*, 287 Minn. 344, 178 N.W.2d 604 (1970). There, in dicta, this court said it appeared from various decisions

from other jurisdictions that business records could not be used to prove an essential element of a crime without testimony of the person having personal knowledge of the element, citing *State v. Tims*, 9 Ohio St.2d 136, 224 N.E.2d 348 (1967). *Tims* and the case *Tims* relies on have since been overruled, and it appears the dicta in *Matousek* no longer accurately reflects the law in other jurisdictions. We have since referred to the *Matousek* dicta in *State v. Wiley*, 295 Minn. 411, 205 N.W.2d 667 (1973), and *State v. Dahms*, 310 N.W.2d 479 (Minn.1981), stressing the concern for the trustworthiness of hearsay when the confrontation clause is implicated. Here, in our present cases, the persons who testified were involved in the preparation of the business records, particularly with respect to the limited matters for which the records are admissible, thus satisfying *Wiley's* and *Dahms'* concerns for trustworthiness.

after being absent he is expected to provide a proper parental excuse, or, in lieu thereof, an explanation for his absence. Under proper school policies, one would expect the school to ask the child, if no sufficient parental excuse was provided, why he or she was not in school. At the truancy hearing, the state will need to call the attendance clerk or other person who talked to the child to testify to the child's statement.[6] If the child's explanation is simply that he "missed the bus" or "overslept," not only is the explanation insufficient but it permits an inference, beyond a reasonable doubt, that the child's absence was a result of volitional conduct and that the child was "absenting himself" from school. (This inference is further strengthened when the bus is "missed" or the child has "overslept" seven or more times as is required for a truancy offense.) If the child wishes to escape the inference of volitional conduct, the child must come forward at the hearing with contrary evidence.

It is helpful to compare *State v. Brechon*, 352 N.W.2d 745 (Minn.1984). There the state had the burden of proof in a criminal trespass case to show the defendant "[t]respasses upon the premises of another *without claim of right.*" Minn.Stat. § 609.605(5) (emphasis added). We held the state must present evidence from which it is reasonable to infer beyond a reasonable doubt that defendant had no claim of right. We said the inference of no claim of right could be established by showing title or possession of the premises in a third party and no permission to enter the premises given by that third party. The burden was then on the defendant to rebut the inference.

■■■ So, here, the state must produce evidence from which it may be inferred beyond a reasonable doubt that the child was absent without a lawful excuse and was "absenting himself." In most

cases this can be accomplished by use of the school attendance records for which a proper foundation has been laid plus the testimony of the attendance clerk or social worker who talked with the child. This should not be unduly burdensome for the school because the attendance clerk or social worker will be in court anyway to lay the foundation for admission of the attendance records.

### B.

■■■ In L.Z.'s case, the attendance record shows numerous excused absences and, in addition, 17 absences with no lawful excuse proffered. L.Z. took the witness stand to rebut the inference of no lawful excuse, testifying that she offered excuses from her mother saying she was sick or that she "missed the bus or something," and the school would say that it was not all right for her mother to excuse her. She specifically testified the principal had refused to accept excuses submitted by her mother. The state did not call the principal as a witness but recalled the attendance clerk in rebuttal, who testified any excuses received from the mother were honored. L.Z. denied fabricating any excuse notes. The school records show L.Z. saw the principal on three of the unexcused days, but it is unclear if the mother had submitted an excuse note for those 3 days. While L.Z. claimed she was sick most of the fall, she called no doctor and she admitted during this period of time she was working at a part-time job. On this record, the trier of fact could have disbelieved L.Z.'s claim she was too sick to attend school and believed the attendance clerk's claim that she did not disregard or reject notes from L.Z.'s mother stating L.Z. was sick. If one excludes the 3 days L.Z. claimed the principal rejected notes from L.Z.'s mother offering a lawful excuse, it was established beyond a reasonable doubt that L.Z. was absent

---

6. One would expect the attendance clerk to have recorded the child's statement in the school attendance records, and perhaps to use the record to refresh memory while testifying. The child's recorded statement is not, however, admissible as an admission, but may be admissible on other grounds if the attendance clerk testifies. *See Wagner v. Thomas J. Obert Enterprises*, 396 N.W.2d 223 (Minn.1986).

without a lawful excuse at least 14 days. Further, the trier of fact, in disbelieving L.Z.'s claim of sickness and relying on her testimony that on some days she was absent because she "missed the bus or something," could also have found beyond a reasonable doubt L.Z. was absent on the 14 days by reason of her own choice or neglect. We affirm the determination of habitual truancy.

 In the case of C.R.P., the school records showed the boy was absent 3 days in the fall of 1984 and on January 15, 1985, all 4 days without an excuse from the father. Indeed, the social worker testified the father told her the boy was not excused. The absences during the period January 16 to February 6, 1985, for which no parental excuse of any kind was received, were also absences without lawful excuse. Although the state established more than seven absences without lawful excuse, it failed to prove at least seven of these absences were a result of C.R.P.'s own choice or neglect. There was evidence that after January 15 C.R.P. had been moved to a different school attendance district to live with his mother. It cannot be said the boy "absented himself" from school when his mother was at fault in not enrolling the boy in the new school or else making arrangements for the boy to continue attendance at his old school until his enrollment was changed.

In the case of S.L.P., the school records showed 2 days when the child was absent and no excuse was provided; either the parent did not call the school and the school was unable to reach the parent, or the parent, when reached, said the child was not excused. On 10 other days the child was absent and the mother either called the school or wrote a note saying the child had missed the bus or overslept. These explanations, on their face, are insufficient as lawful excuses. On 2 other days, the mother was transferring to a shelter home, but here again, this reason, at least without further explanation, is insufficient as a lawful excuse for the child not being in school. Thus, we have 14 absences with-

out a lawful excuse. The girl did not testify. The social worker, however, testified he talked with S.L.P. several times about her absences, and "[s]he usually didn't say very much—'Just missed'—kind of shrug of the shoulders." From this admission, the trier of fact could infer the girl's absences were, beyond a reasonable doubt, by her own choice or neglect.

As to L.Z. and S.L.P., we reverse the court of appeals and affirm the determinations of habitual truancy. As to C.R.P., we affirm the court of appeals' reversal of the truancy determination.

Affirmed in part and reversed in part.