**STATE of Minnesota, Respondent,**

v.

**Douglas Gerard BURG, Petitioner, Appellant.**

No. C6–00–1822.

Supreme Court of Minnesota.

Aug. 1, 2002.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant State Public Defender, Minneapolis, MN, Attorneys for Appellant.

Mike Hatch, Minnesota Attorney General, Michael K. Riley, Sr., Nicollet County Attorney, Todd W. Westphal, Assistant County Attorney, Saint Paul, MN, Attorneys for Respondent.

## OPINION

PAGE, Justice.

Appellant Douglas Gerard Burg was convicted of felony nonsupport of a child in violation of Minn.Stat. § 609.375, subd. 2a (1998). Burg's conviction was based on his failure to pay child support to his former wife Lisa Burg (Lisa) from May 1995 to October 1999. Burg was sentenced to 30 days in jail, placed on probation for two years, ordered to participate in vocational rehabilitation services, and ordered to pay a fine of $5,000, with credit against the fine for any child support payments made. The trial court stayed Burg's jail time pending appeal. On appeal, the court of appeals affirmed Burg's conviction, at which point Burg's 30–day jail sentence was executed. Because the trial court committed plain error that affected substantial rights by instructing the jury that Burg had the burden of proof with respect to an element of the offense of nonsupport of a child, we reverse Burg's conviction and grant him a new trial.

Burg and Lisa were married in 1984 and divorced in 1989. During their five-year marriage, they had four children. At the time of the divorce, Lisa was awarded custody of the children and Burg was ordered to pay child support in the amount of $187.80 per month, calculated on an earning capacity of $5 per hour for 40 hours per week. Burg made no child support payments from May 1995 to October 1999. In 1998, two tax refunds totaling $257 were intercepted and applied to his child support obligation. At the time of his trial, Burg was 36 years old, was unemployed, lived with his mother, and, according to Burg, suffered from severe depression.

Throughout these proceedings, Burg has not disputed the existence of a court order requiring him to pay child support, nor does he dispute that he failed to pay child support during the relevant period. Rather, Burg claims that he has a lawful excuse for his failure to meet his child support obligation. Burg's claimed lawful excuse is that he has a mental incapacity that affects his ability to obtain and maintain employment. In support of this claim, Burg argues that he is unable to keep jobs because of depression, caused by working, and because of a series of traumatic events in his life, including: having suffered nearly fatal head injuries when run over by a two-ton truck at age 3, which, according to his brother, made him "mentally slow"; growing up in an often violent alcoholic home; at age 10, seeing one of his friends shoot and kill himself; and being hospitalized for depression at age 14.

Before trial, defense counsel informed the state that Burg planned to submit expert psychological testimony relating to his mental capacity and his inability to work. At a hearing on a motion in limine brought by the state, the state sought to preclude Burg from submitting evidence as to his mental or psychological health as an excuse for Burg's failure to pay child sup-

port and to preclude him from presenting witnesses to testify as to his ability to obtain employment. The state also sought to have the trial court determine that the language "without lawful excuse" contained in Minn.Stat. § 609.375, subd. 1 (1998), did not constitute an element of the offense charged.

From an offer of proof made during trial, it appears that psychologists were prepared to testify that Burg had an IQ of 67, which placed him in the extremely low-range classification of intelligence, that his abilities were limited enough to affect his ability to seek out and maintain employment, that he experienced depression with anxiety, and that he was easily overwhelmed. One psychologist stated that Burg's "past history of emotional deterioration, head injury, hearing problems, [and] inability to sustain himself educationally or in the work area suggest a disability of substantial magnitude."

Although the trial court did not issue a formal order after the hearing, it advised the parties that it would not permit the introduction of expert psychological testimony. The trial court reasoned that such testimony lacked probative value because the psychologists were unable to correlate Burg's present mental condition with his having been so mentally incapacitated that he could not maintain employment. With respect to the statutory language "without lawful excuse," the trial court advised the parties that the language constituted an element of the offense, which the state bore the burden of proving beyond a reasonable doubt.

Burg subsequently requested that he be permitted to have a vocational rehabilitation psychologist testify. The trial court denied that request in an advisory letter to the parties. The rationale for denying this request was that such a psychologist would be unqualified to testify about Burg's ability to maintain employment and that his or her testimony would have minimal probative value.

At trial, there was testimony that Burg's work history was spotty from at least the time of his marriage to Lisa. Burg was employed during the last year of their marriage at the Le Sueur Foundry for approximately three months and at a lawn service for approximately three months. Both Lisa and Burg testified that during their marriage Burg also bought cars to fix up and sell. According to Burg, the money he earned from these car transactions was not enough to make a living. Otherwise, trial testimony confirmed that Burg was unemployed during most of the marriage.

Evidence presented at trial relating to Burg's employment between May 1995 and October 1999 included: testimony from James Neidecker that Burg worked for him at his pole-barn construction business from mid-December 1996 to mid-February 1997, and that Burg quit that job for an unknown reason; evidence that Burg worked for a short period at Green Giant in its canning operation; testimony from Colleen Johnson, a neighbor of Burg's, indicating that she thought Burg was employed for "a few months" beginning in May 1998;[1] and, finally, testimony from Burg that he sometimes earned petty cash helping his mother clean houses.

Contradicting its earlier advisory letter, the trial court instructed the jury at the close of trial:

> The elements of non-support of a child are: first, Defendant was legally obligated to provide support to a child. Sec-

---

1. Johnson's testimony was based on her observations of Burg as he rode his bike past her house each weekday morning wearing work clothes and returned in the late afternoon looking dirty and sweaty, as though he had been working.

ond, Defendant knowingly omitted and failed to provide support to the child. *Third, Defendant had no lawful excuse. Mental incapacity is a lawful excuse. * * * Defendant has the burden of proving this mental incapacity by the greater weight of the evidence. * * ** Fourth, Defendant's omission and failure occurred in Nicollet County, Minnesota. * * *

If you find that each of these four elements has been proved beyond a reasonable doubt, Defendant is guilty of non-support of a child. If you find that any of these elements has not been so proved, Defendant is not guilty of non-support of a child.

(Emphasis added.)

Burg did not object to the instructions at trial, but, on appeal to the court of appeals, he claimed that the trial court erred by instructing the jury that he had the burden of proving mental incapacity by the greater weight of the evidence. Burg also claimed that the trial court erred when it precluded him from offering expert psychological testimony in support of his claim that he was lawfully excused from paying child support because his mental incapacity rendered him unable to obtain or maintain employment.

The court of appeals held that the instruction was error. *State v. Burg,* 633 N.W.2d 94, 99 (Minn.App.2001). The court of appeals reasoned that, by placing the burden of proving mental incapacity on Burg, the instruction impermissibly required Burg to disprove "the existence of an element of the crime charged; namely, a legal obligation to provide child support." The court of appeals went on to conclude, however, that the unobjected-to error was not prejudicial based on "uncontroverted evidence that Burg was employed during the period in question, that he was a good worker, and that his employer would have been willing to rehire him after he quit."

With respect to the exclusion of the expert psychological testimony, the court of appeals concluded that the trial court did not abuse its discretion.

In this appeal, Burg presents the same two issues that he presented to the court of appeals: (1) whether the trial court's jury instruction concerning lawful excuse impermissibly shifted the burden of proof to Burg; and (2) whether the trial court abused its discretion when it precluded admission of Burg's expert psychological testimony.

■ Although Burg did not object to the jury instruction concerning lawful excuse at trial, we may review the issue on appeal if it is plain error. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998); Minn. R.Crim. P. 31.02. Plain error is: (1) error; (2) that is plain; and (3) that affects substantial rights. *Griller,* 583 N.W.2d at 740 (citing *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). An error is plain if the error is "clear" or "obvious." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Ihle,* 640 N.W.2d 910, 917 (Minn.2002). To show that the error affected substantial rights, the defendant bears the "heavy burden" of showing that the error was prejudicial— that is, the defendant must show that there is a reasonable likelihood that the error substantially affected the verdict. *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770; *Griller,* 583 N.W.2d at 741; *State v. Glidden,* 455 N.W.2d 744, 747 (Minn.1990). If these three factors are present, we then assess whether we should address the error to ensure fairness and the integrity of judicial proceedings. *Griller,* 583 N.W.2d at 741.

■ The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact nec-

essary to constitute the crime with which [the accused] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *State v. Auchampach*, 540 N.W.2d 808, 816 (Minn.1995). However, the legislature's mere recognition of a mitigating circumstance "does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate." *Patterson v. New York*, 432 U.S. 197, 209, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Thus, the issue presented is whether the phrase "without lawful excuse" constitutes an element of the offense of nonsupport of a child. If so, the trial court's instruction violated due process by placing the burden of proof on Burg.

The state argues that "without lawful excuse" should not be considered an element of the offense because nonpayment of child support is an act of moral turpitude and requiring the state to prove the absence of a lawful excuse would place an impossible burden on the prosecution. *See State v. Brechon*, 352 N.W.2d 745, 749 (Minn.1984) (stating that defendant can be required to prove that a statutory exception to a criminal offense applies if the act itself is ordinarily dangerous to society or involves moral turpitude, and if requiring the state to prove that the exception does not apply would place an impossible burden on the prosecution). Before allocating the burden of proof in *Brechon*, we articulated the test for determining whether something is an element of a criminal offense: " 'whether the exception is so incorporated with the clause defining the offense that it becomes in fact a part of the

description.' " *Id.* at 749 (quoting *Williams v. United States*, 138 F.2d 81, 81–82 (D.C.Cir.1943)).

The legislature's definition of the offense of nonsupport of a child is found in section 609.375, subdivision 1, which provides:

> Whoever is legally obligated to provide care and support to a * * * child, whether or not its custody has been granted to another, and knowingly omits and fails *without lawful excuse* to do so is guilty of a misdemeanor, and upon conviction may be sentenced to imprisonment for not more than 90 days or to payment of a fine of not more than $700, or both.

(Emphasis added.)[2] Section 609.375, subdivision 2a, the subdivision under which Burg was convicted, upgrades the offense to a felony if the nonsupport "continues for a period in excess of 180 days."

As is clear from the language of section 609.375, subdivision 1, the phrase "without lawful excuse" is part of the legislature's description of the offense of nonsupport of a child. By embedding the phrase "without lawful excuse" in the definition of the offense, the legislature demonstrated its intent to include the absence of a lawful excuse as one of the facts necessary for a conviction.[3] When the legislature in this manner includes the absence of a fact in the definition of an offense, the absence of that fact is generally treated as an element of the offense. Although we have not universally applied this rule, *see State v. Paige*, 256 N.W.2d 298, 302–04 (Minn.1977) (discussing the criminal offense of possession of a pistol in a public place without a permit and stating that the phrase "without first having ob-

---

**2.** In 2001, the legislature deleted the phrase "without lawful excuse" from the definition of the offense of nonsupport of a child. Act of May 22, 2001, ch. 158, § 7, 2001 Minn. Laws 468, 473. The amended version of the statute is not at issue in this case.

**3.** We note that the legislature did not expressly identify a lawful excuse as an affirmative defense in the 1998 statute for felony nonsupport of a child. *Cf.* Minn.Stat. §§ 609.205, 609.21, subd. 4a, 609.26, subd. 2 (2000).

tained a permit" was an "exception" to the offense, rather than an element), our more recent cases have consistently treated such language as creating an element of an offense, *see In re Welfare of L.Z.*, 396 N.W.2d 214, 218 (Minn.1986); *Brechon*, 352 N.W.2d at 750.

For example, in *L.Z.*, we interpreted Minn.Stat. § 260.015, subd. 19 (1984),[4] which defined the juvenile offense of habitual truancy. *L.Z.*, 396 N.W.2d at 216 & n. 1. Section 260.015, subdivision 19, provided:

> "Habitual truant" means a child under the age of 16 years absenting himself from attendance at school *without lawful excuse* for seven school days if the child is in elementary school or for one or more class periods on seven school days if the child is in middle school, junior high school, or high school.

(Emphasis added.) We stated in *L.Z.* that "without lawful excuse" was an element of habitual truancy, 396 N.W.2d at 218, and that the state had the burden of proving beyond a reasonable doubt the absence of a lawful excuse, *id.* at 222.

In *Brechon*, we reached a similar conclusion when interpreting similar language in the criminal trespass statute, Minn.Stat. § 609.605(5) (1982).[5] *Brechon*, 352 N.W.2d at 750. Section 609.605(5) provided that "[w]hoever intentionally * * * * [t]respasses upon the premises of another and, *without claim of right*, refuses to depart therefrom on demand of the lawful possessor thereof" is guilty of a misdemeanor. (Emphasis added.) The court stated that "without claim of right" was "integral to the definition of criminal trespass," and held that it was "an element the state must prove beyond a reasonable doubt." *Brechon*, 352 N.W.2d at 750.

■ Because the legislature incorporated the phrase "without lawful excuse" in the definition of the offense of nonsupport of a child, and consistent with our treatment of similar language in *L.Z.* and *Brechon*, we hold that "without lawful excuse" is an element of the offense of nonsupport of a child. As a result, due process requires the state to prove the absence of a lawful excuse beyond a reasonable doubt.[6]

**4.** Section 260.015, subdivision 19, was repealed by the legislature in 1999. Act of May 11, 1999, ch. 139, art. 4, § 3, 1999 Minn. Laws 567, 692. "Habitual truant" is now defined in Minn.Stat. § 260C.007, subd. 19 (2000).

**5.** The statute defining criminal trespass has since been amended numerous times and is now codified at Minn.Stat. § 609.605 (2000).

**6.** We note that, as in *L.Z.* and *Brechon*, the state can satisfy this burden by presenting evidence sufficient to permit an inference that the defendant's knowing failure to pay child support was, beyond a reasonable doubt, without lawful excuse. *See L.Z.*, 396 N.W.2d at 221 (explaining that state could present school attendance records showing no excuse or insufficient excuse for student's absence, and that such records would permit an inference that student's absence from school was, beyond a reasonable doubt, without lawful

excuse); *Brechon*, 352 N.W.2d at 750 (explaining that state could present evidence that third party had title to property and third party did not grant permission to defendant to enter property, and that such evidence would permit an inference that defendant's trespass was, beyond a reasonable doubt, without claim of right). With respect to the offense of nonsupport of a child, the state can establish an inference that a defendant's knowing failure to provide child support was, beyond a reasonable doubt, without lawful excuse by presenting evidence of an enforceable court order requiring the defendant to pay child support.

The defendant can rebut this inference by coming forward with evidence of an allegedly lawful excuse, as Burg did in this case, but the burden remains on the state to disprove beyond a reasonable doubt any lawful excuse raised by the defendant. *See L.Z.*, 396 N.W.2d at 221–22; *Brechon*, 352 N.W.2d at 750.

See *Winship,* 397 U.S. at 364, 90 S.Ct. 1068; *Auchampach,* 540 N.W.2d at 816. Thus, the trial court's instruction that Burg bore the burden of proving a lawful excuse by the greater weight of the evidence was error.

■■ To determine whether the error was plain, we evaluate whether the error was clear and obvious at the time of Burg's appeal. *Johnson,* 520 U.S. at 467–68, 117 S.Ct. 1544; *Ihle,* 640 N.W.2d at 917. There are no Minnesota appellate decisions explicitly concluding that the absence of a lawful excuse is an element of the offense of nonsupport of a child. However, as discussed, we have held under similar circumstances that, when the legislature includes the absence of a fact in the definition of an offense, the absence of that fact is an element of the offense. *See L.Z.,* 396 N.W.2d at 218; *Brechon,* 352 N.W.2d at 750. Moreover, the trial court in this case appears to have recognized that the absence of a lawful excuse was an element of the offense of nonsupport of a child. The trial court instructed the jury: "The elements of non-support of a child are: * * * Third, Defendant had no lawful excuse." Based on these considerations, we conclude that it was clear and obvious at the time of Burg's appeal that the absence of a lawful excuse was an element of the offense of nonsupport of a child, and that the error of instructing the jury that Burg had "the burden of proving [a lawful excuse] by the greater weight of the evidence" was therefore plain.

■ We next address whether the trial court's error affected substantial rights. *See Griller,* 583 N.W.2d at 741. The trial court concluded that mental incapacity constituted a lawful excuse, and so instructed the jury. Thus, had the trial court properly allocated the burden of proof, the state would have been required to prove beyond a reasonable doubt the absence of mental incapacity. Yet the state was not put to that burden because the jury was instructed that Burg had the burden of proving mental incapacity by the greater weight of the evidence. Shifting the burden of proof of an element of a crime to the defendant violates the defendant's constitutional right to due process. *Auchampach,* 540 N.W.2d at 816; *see Winship,* 397 U.S. at 364, 90 S.Ct. 1068. Because Burg's constitutional right to due process was violated in this manner, we conclude that the error affected Burg's substantial rights.

Finally, we conclude that it is necessary to correct the trial court's error to ensure fairness and the integrity of judicial proceedings. *See Griller,* 583 N.W.2d at 740. As the United States Supreme Court stated in *Winship,* requiring the state to prove beyond a reasonable doubt every element of the crime charged "is indispensable to command the respect and confidence of the community in applications of the criminal law." 397 U.S. at 364, 90 S.Ct. 1068. We therefore reverse Burg's conviction and remand for a new trial.[7]

Reversed and new trial granted.

---

7. In light of the jury instruction in this case, it is particularly troubling that the trial court denied Burg's request to have a vocational rehabilitation expert testify and excluded Burg's expert psychological testimony. Although not considering the issue here, we see no reason why such expert psychological testimony would not have met the requirements of Minn. R. Evid. 702. Given our resolution of the jury instruction issue, however, we decline to address this evidentiary matter.