2003 VT 113

In re A.V., S.T., A.C. and E.V., Juveniles

[844 A.2d 739]

No. 03-301

¶ 1. December 19, 2003. The parents of four juveniles — A.V., born in March 1987; S.T., born in May 1988; A.C., born in July 1991; and E.V., born in February 1994 — appeal the family court's adjudication of the juveniles as children in need of care and supervision (CHINS) based on educational neglect and truancy. The juveniles, through their appointed counsel, join the State in opposing the parents' appeal. We affirm.

¶ 2. The three oldest children attended public school during the 1998-1999 school year after mother's application for home school enrollment was rejected because of her failure to provide for the children's special needs. The children were partially home-schooled during the 1999-2000 school year, with the public school providing special education services to A.V. and A.C. and additional instruction in reading, math, and language arts to the three oldest children. In response to mother's home schooling notice of enrollment for the 2000-2001 school year, the Department of Education informed mother that her plan was inadequate and set a hearing date before a hearing officer. See 16 V.S.A. § 166b(e) (commissioner may call hearing if she or he has information that creates significant doubt about whether proposed home study program can or will provide minimum course of study for student who has not yet enrolled). In November 2001, a hearing officer took evidence and concluded that mother (1) had not filed progress assessments with respect to her four children; (2) had failed to present a curriculum adapted for her special needs children; and (3) had failed to show that her proposal would provide even a minimal level of study. Consequently, mother's home schooling program was disallowed for both the 2001-2002 and 2002-2003 school years. See *In re S.M.*, 2003 VT 41, ¶ 11, 175 Vt. 524, 824 A.2d 593 (mem.) ("[T]he Commissioner is empowered to determine whether a home study program complies with the statute in providing a minimum course of study, and to prevent enrollment through a noticed hearing if the program is not in compliance."). Nevertheless, the children

did not attend public school during the 2001-2002 school year. Nor did either parent ever seek to appeal the hearing officer's decision or file a notice of home school enrollment for the 2002-2003 school year.

¶ 3. At the beginning of the 2002 school year, A.V.'s biological father telephoned the Department of Social and Rehabilitation Services (SRS) and expressed concern that A.V. was not in school. During the ensuing investigation, SRS found evidence that the children had been exposed to unacceptable living conditions. Because none of the children were properly enrolled in either a home study program or a public or approved independent school, SRS filed a petition alleging that the children were CHINS due to educational neglect and truancy. In September 2002, the family court issued an emergency detention order and placed the children in SRS custody based on a preliminary finding of educational neglect and truancy. Four days of hearing on the CHINS petition were held between February and May 2003. On May 28, 2003, after the merits hearing was concluded, the family court found all four juveniles to be CHINS on the grounds that they were (1) without proper parental care as the result of educational neglect, and (2) truant. The parents appeal, arguing that (1) the CHINS petition should be dismissed with respect to A.V. because, at the time of the merits hearing, he had reached the age of sixteen and thus was no longer required to attend school; (2) the trial court's findings of educational neglect were not supported by the record; and (3) the children were not habitually truant because their absence from school was not the result of any volitional conduct on their part.

¶ 4. We first address the parents' argument that the CHINS petition against A.V. should be dismissed because he reached the age of sixteen before the merits hearing was held. The family court may make a CHINS adjudication upon finding that a child is "without proper . . . education . . . necessary for his well-being," 33 V.S.A. § 5502(a)(12)(B), or "being subject to compulsory school attendance, is habitually and without justification truant from school." § 5502(a)(12)(C). Here, the court adjudicated each of the children as CHINS based upon both educational neglect and truancy. Section 1121 of Title 16 requires persons having control of children ages six to sixteen to cause them to attend school. The parties agree that A.V. reached sixteen years of age after the CHINS petition was filed but before the merits hearing on the petition was held. The State relies on two statutory provisions to counter the parents' contention that the CHINS petition is now moot with respect to A.V. The first one is 33 V.S.A. § 5502(a)(1)(E), which permits an adjudication of CHINS based on truancy as long as the petition is filed before the child turns sixteen. The second is 16 V.S.A. § 1122, which provides that "[a] person having the control of a child *over* sixteen years of age who allows such child to become enrolled in a public school, shall cause such child to attend such school continually for the full number of the school days of the term in which he is so enrolled . . . ." (Emphasis added.) According to the State, because SRS filed its petition before A.V. turned sixteen, obtained custody of A.V., and enrolled him in public school first for the 2002-2003 school year and later for the 2003-2004 school year, A.V. could be adjudicated CHINS for failure to attend school, even though he had turned sixteen before the CHINS merits hearing. In response, the parents argue that A.V. cannot be CHINS because of what SRS did.

¶ 5. We conclude that the CHINS petition is not moot with respect to A.V. This is not a case in which SRS created the basis for the CHINS petition by enrolling A.V. in school, as the parents suggest. A.V. was adjudicated CHINS not be-

cause of what SRS did, but rather because of what the parents neglected to do — see to it that he obtained an adequate education. Further, the family court's findings demonstrate that the parents' neglect in failing to provide A.V. with an adequate education before he turned sixteen continued to have negative repercussions for A.V. beyond his sixteenth birthday. Indeed, the court found that A.V. still lacked basic knowledge that would allow him to function independently in the community, but that there was still a window of opportunity to address these deficiencies. Therefore, the case is not moot. Cf. *In re P.S.*, 167 Vt. 63, 67, 702 A.2d 98, 102 (1997) ("case is not moot when negative collateral consequences are likely to result from the action being reviewed").

¶ 6. As noted, the family court explicitly based its CHINS determination on both truancy *and* educational neglect. Specifically, with respect to A.V., the court found that A.V.'s educational needs were particularly complex and required expertise to address them because he was borderline mentally retarded. The court noted that A.V. had a reading level of upper second grade, a fourth grade math level, and the communications skills of an eight-year old. The court concluded that the parents were incapable of meeting A.V.'s special educational needs or teaching him the independent living skills he needed to be a functioning member of society. The court stated that A.V. had only a short period of time to gain the necessary academic skills critical to his being able to function in the community, and that he was doing so within the context of a Life Skills Program designed to teach him functional academics, vocational skills, and living skills. In the court's view, without such a program, A.V. would be unable to grow and develop to his potential. These findings and conclusions support the court's determination of educational neglect with respect to A.V.

¶ 7. The parents argue, however, that the family court's findings of educational neglect are unsupported by the record — not only with respect to A.V., but all the children. The parents do not specify which findings are unsupported, but rather vaguely assert that the record does not support the findings because SRS's experts focused on the children's present needs and how a public education would meet those needs, rather than on the shortcomings of the parents' home schooling program. We find no merit to this argument. The evidence concerning the deficiencies of the parents as teachers and the inadequate education the children received at home was undeniable. Mother, the home schooling applicant and teacher of record, did not finish high school. The court found that she had noticeable speech irregularities. Father, who had taken responsibility for the education of A.C. and E.V. and who taught all of the children math and science, was learning disabled with an IQ of 64, did not finish high school, and was receiving independent living assistance from the Department of Vocational Rehabilitation. The Department of Education determined that mother's home school plan was deficient in several respects. The court found a discrepancy between the "canned" home schooling program that mother had submitted, which included tasks well beyond the capabilities of the children, and the education that the children were actually receiving at home. Mother conceded that she had used a book to put "fancy" words in the course of study she sent to the state. The court noted that mother had not read some of the books she supposedly had the children report on. Moreover, there was also ample evidence that each of the children's learning had stagnated during the years in which they were home schooled. Although, in some cases, the State's witnesses could not pinpoint what aspect of the mother's home schooling program had been defi-

cient, the evidence as a whole entitled the court to conclude that the children's lack of progress was the result of the inadequate education provided to them by their parents at home.

¶ 8. Finally, the parents argue that the children could not have been habitually truant from school, as the family court found, because their absence from school was the result of their parents' decision to home school them and not their volitional conduct. The main case cited by the parents in support of this argument, however, involved charges of truancy directed against the juveniles pursuant to a distinct statute. See *In re L.Z.*, 396 N.W.2d 214, 218 (Minn. 1986) (statute defining truant as child "absenting himself from attendance at school without lawful excuse" implies volitional conduct on part of child). In contrast, the statutory provision at issue here does not imply a volitional element to truancy. See 33 V.S.A. § 5502(a)(12)(C) (CHINS means a child who "being subject to compulsory school attendance, is habitually and without justification truant from school"). In any event, we need not determine whether habitual truancy requires volitional conduct on the part of the juvenile because, as noted, the family court determined that educational neglect on the part of the parents independently supported the CHINS adjudication with respect to all four children. See *id.* § 5502(a)(12)(B) (CHINS means a child who is "without proper . . . education . . . necessary for his well-being"); cf. *In re B.K.J.*, 451 N.W.2d 241, 243 (Minn. Ct. App. 1990) (legislation concerning children in need of protection or services takes volitional/nonvolitional distinction into account by providing, in addition to truancy, educational neglect as basis for protective services). As we concluded above, the record supports the court's finding of educational neglect.

*Affirmed.*