*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0676**

State of Minnesota,
Respondent,

vs.

William Harold Jones,
Appellant.

**Filed July 28, 2014
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-CR-11-3398

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Stacy St. George, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget K. Sabo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Connolly, Judge; and Willis, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant appeals his conviction of aiding and abetting second-degree burglary, arguing that (1) the circumstantial evidence was insufficient to convict him and (2) the district court committed plain error by failing to properly instruct the jury on accomplice liability.  We affirm.

## FACTS

Appellant William Jones met I.C. in 2010.  He would occasionally pick her up at a residence in South St. Paul.  The owner of the residence, J.B., allowed I.C. to stay at his home periodically but would not let her be in the house alone.  On September 26, 2011, J.B. made sure I.C. left his residence before he left for work.  He locked the doors before he left while I.C. was outside.

Also on September 26, two St. Paul police officers were conducting surveillance on appellant.  They saw appellant pull into a gas station and I.C. enter appellant's vehicle.  Appellant and I.C. left the gas station and proceeded to an alley behind J.B.'s house.  Appellant exited the vehicle and, according to one officer, appeared to be acting as a lookout for I.C.  I.C. walked between two houses and then walked back to appellant.  Appellant and I.C. walked to the side of J.B.'s house.  An officer saw appellant at the side of the house standing with his hands in the air under a window.  He simultaneously observed feet extending out of the window before they disappeared into the house.  Immediately thereafter, appellant drove to the front of the house.  The officer observed I.C. leave the residence through the front door with a television and a computer monitor,

which she loaded into appellant's vehicle. Appellant and I.C. left the scene and were subsequently stopped by law enforcement.

Based on these events, the state charged appellant with aiding and abetting second-degree burglary in violation of Minn. Stat. §§ 609.582, subd. 2(a)(1) (2011); 609.05, subd. 1 (2010). Appellant testified at trial and stated that he did not pick up I.C. at the gas station, but instead, met her at J.B.'s house. He testified that he did not exit his vehicle and that he waited out front while I.C. brought the television and computer monitor to his car. The jury found appellant guilty, and the district court sentenced him as a career offender to 120 months in prison.

## D E C I S I O N

## I.

Appellant argues that "the circumstantial evidence was insufficient as a matter of law to prove that [appellant] intentionally aided, or even knew about, [I.C.'s] burglary of [J.B.'s] residence." We disagree.

When reviewing a sufficiency-of-the-evidence claim, we determine whether the evidence, viewed in the light most favorable to the conviction, is sufficient to allow the jury to reach a guilty verdict. *State v. Hurd*, 819 N.W.2d 591, 598 (Minn. 2012). We presume that the fact-finder believed the state's witnesses and disbelieved any contrary evidence and defer to the fact-finder's credibility determinations. *State v. Buckingham*, 772 N.W.2d 64, 71 (Minn. 2009).

A person may be guilty of aiding and abetting the crimes of a principal if he or she "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the

other to commit the crime." Minn. Stat. § 609.05, subd. 1. The state must prove that the defendant "had knowledge of the crime and intended his presence or actions to further the commission of that crime." *State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011). The jury may infer the necessary intent from the circumstances of the crime, including the "defendant's presence at the scene of the crime, defendant's close association with the principal before and after the crime, [and] defendant's lack of objection or surprise under the circumstances." *State v. Swanson*, 707 N.W.2d 645, 659 (Minn. 2006). The aiding-and-abetting statute requires more than inaction and "passive approval" to impose liability. *Hawes*, 801 N.W.2d at 673 (quotation omitted). But "active participation in the overt act which constitutes the substantive offense is not required." *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn. 1995).

The sufficiency of circumstantial evidence should be closely scrutinized on review in a two-step process. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). The first step is to identify the circumstances proved, deferring to the jury's acceptance of proof of those circumstances, based on recognition that the jury "is in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony." *Id.* Next, this court "examine[s] independently the reasonableness of all inferences that might be drawn from the circumstances proved," including those consistent with a hypothesis other than guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010) (quotation omitted). If any of the circumstances proved is inconsistent with guilt, a reasonable doubt as to guilt arises. *State v. Al-Naseer*, 788

4

N.W.2d 469, 474 (Minn. 2010). But a conviction based on circumstantial evidence will not be overturned based merely on conjecture. *Andersen*, 784 N.W.2d at 330.

Viewed in the light most favorable to the verdict, the state proved the following circumstances at trial. Appellant and I.C. have known each other for several years and appellant would occasionally pick up I.C. from J.B.'s residence. I.C. did not have a key to J.B.'s residence and was not an invited guest or resident when J.B. was not home. On the day of the burglary, officers were conducting surveillance on appellant and observed him pick up I.C. at a gas station and drive to J.B.'s residence. Appellant drove into the alley behind the house, where an officer saw him acting as a lookout. The officer also observed appellant and I.C. at the side of the residence underneath a window. There, he observed appellant with his hands in the air, as if he had helped or boosted I.C. through the window, and saw feet dangling out of the window. Officers discovered that this window had been broken, and J.B. testified that it was not broken when he left for work. Appellant pulled his car to the front of the house and waited outside while I.C. retrieved the computer monitor and television. I.C. loaded the television and computer monitor into appellant's car.

We now turn to the second step. "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quotation omitted). "The [s]tate does not have the burden of removing all doubt, but of removing all reasonable doubt." *Al-Naseer*, 788 N.W.2d at 473. While independently

examining the reasonableness of the possible inferences, we "give no deference to the fact finder's choice between reasonable inferences." *Id.* at 473-74.

Appellant argues that these circumstances reasonably support the hypothesis that appellant thought that I.C. was entering her own residence and removing her own property. We disagree. Appellant met I.C. at a gas station rather than at the house from which she wished to remove "her property." I.C. did not have a key to the residence and did not contact or wait for J.B. to return to gain access. Instead, appellant lifted I.C. to the window, which she broke to enter the house.

While it is not a crime to break into one's own home, appellant did not assert this theory at trial. He testified that he drove to J.B.'s house and waited in the car while I.C. emerged from the house with the television and the computer monitor. In contrast, an officer testified that he witnessed appellant acting as a lookout before meeting I.C. at the side of J.B.'s house to lift her to the window that she broke to gain entry. Thereafter, appellant drove to the front of the house, where he waited while I.C. removed the television and the computer monitor from the residence and loaded them into appellant's vehicle.

There is no evidence to suggest that appellant objected to I.C. breaking the window to gain entry into the home. Although appellant claims that I.C. told him she was moving out of J.B.'s residence, she did not remove any other property such as clothing, toiletries, or other household items that would be consistent with moving out; she only brought out two valuable items. These circumstances support the inference that appellant knew that I.C. was going to commit a crime and intended his actions to further

the commission of that crime and no other rational inference. We conclude that the evidence was sufficient for the jury to convict appellant of aiding and abetting second-degree burglary.

**II.**

Appellant next argues that the district court committed plain error when it failed to instruct the jury that appellant had to know of I.C.'s intention to commit the crime and intend to assist her to be guilty of aiding and abetting second-degree burglary. While we agree that the district court plainly erred in instructing the jury, we conclude that this error did not substantially affect the verdict.

Appellant did not object to the jury instructions at trial. We therefore review for plain error. *State v. Vance*, 734 N.W.2d 650, 655 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). "Under this standard, we may review an unobjected-to error only if there is (1) error; (2) that is plain; and (3) that affects substantial rights." *Id.* at 655-56. If these prongs are met, "we then decide whether we must address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotation omitted).

The district court has "considerable latitude" in selecting jury instructions. *State v. Mahkuk*, 736 N.W.2d 675, 681 (Minn. 2007). "[W]e review the jury instructions in their entirety to determine whether the instructions fairly and adequately explain the law of the case." *Milton*, 821 N.W.2d at 805 (quotation omitted). "An instruction is error if it materially misstates the law." *State v. Moore*, 699 N.W.2d 733, 736 (Minn. 2005). "To show that the error affected substantial rights, the defendant bears the heavy burden of

showing that the error was prejudicial—that is, the defendant must show that there is a reasonable likelihood that the error substantially affected the verdict." *State v. Burg*, 648 N.W.2d 673, 677 (Minn. 2002) (quotation omitted).

Appellant argues that the district court gave an erroneous jury instruction because the instruction omitted two necessary elements: "(1) [appellant] knew of [I.C.'s] intention to commit a crime, and (2) [appellant] intended his presence or actions to further its commission." We agree.

The Minnesota Supreme Court decided *Milton* six days before the commencement of appellant's trial and ten days before the jury reached its verdict. 821 N.W.2d at 789. Milton was convicted of first-degree felony murder and attempted first-degree felony murder. *Id.* at 794-95. The district court instructed the jury that if "defendant or a person whom the defendant intentionally aided caused the death of [the victim]," then the jury could find Milton guilty. *Id.* at 806. The supreme court held that a jury instruction on accomplice liability must specifically explain the element of "intentionally aiding". *Id*. at 807-08. The court stated, "to find a defendant guilty as an accomplice, the jury must find beyond a reasonable doubt that the defendant knew his alleged accomplice was going to commit a crime and the defendant intended his presence or actions to further the commission of that crime." *Id.* at 808. "Accordingly, if the district court's instructions allowed the jury to find [the defendant] guilty as an accomplice without first finding that [the defendant] knowingly and intentionally assisted in the commission of a crime, the court erred." *Id.* at 805-06.

Here, the district court provided the jury with the following instruction:

The defendant is guilty of a crime committed by another person, when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with, or otherwise procured the person to commit it.

The defendant is also guilty of any other crime the person commits, while trying to commit the intended crime, if the other crime is reasonably foreseeable to the defendant, as a possible consequence of trying to commit the intended crime.

. . . .

Now, as to the definition of intent. "Intentionally" means that the actor has a purpose to do the thing, or cause the result specified or believes that the act performed by the actor, if successful, will cause the result.

In addition, the actor must have knowledge of those facts that are necessary to make the actor's conduct criminal, and that are set forth, after the word "intentionally."

We conclude that the district court's instruction does not comport with *Milton*.

But appellant cannot meet his heavy burden of showing that the error substantially affected the verdict. *Burg*, 648 N.W.2d at 677. As discussed above, the evidence at trial shows that the state proved beyond a reasonable doubt that appellant knew that I.C. planned to burglarize J.B.'s residence. And appellant's actions of driving I.C. to the house, acting as a "lookout," lifting I.C. to break into J.B.'s house, and waiting in his vehicle while I.C. took the computer monitor and television from the home and loaded them into his vehicle conclusively shows that he actively participated in committing the burglary.

Appellant contends that he was "merely present" at the scene and did not intend his presence to further the commission of a crime. He testified at trial that he thought he was helping I.C. move her own belongings from a house that she had lawful access to.

The jury rejected appellant's theory of the case. *See State v. Johnson*, 568 N.W.2d 426, 436 (Minn. 1997) ("[A] jury, as the sole judge of credibility, is free to accept part and reject part of a witness' testimony." (quotation omitted)). Appellant has not shown that the result would have been different if the district court had properly explained the "intentionally aiding" element. *See Milton*, 821 N.W.2d at 809 ("[E]ven if the jury had been properly instructed, we conclude the jury would have found that Milton intentionally aided his alleged accomplices based on the evidence presented at trial."). Consequently, we conclude that although the district court plainly erred in instructing the jury, this error did not substantially affect the verdict.

**Affirmed.**