STATE v. ISADORE M. BURNSTEIN.[1]

February 1, 1924.

No. 23,754.

**Conviction for arson sustained.**
    1. The evidence warranted the jury in finding the defendant guilty of the crime of arson in the second degree.

**New trial properly denied.**
    2. The motion for a new trial on the ground of newly discovered evidence was properly denied.

Defendant was indicted by the grand jury of Hennepin county charged with the crime of arson in the first degree, tried in the district court for that county before Leary, J., who denied defendant's motion to dismiss the case of the state and at the close of the testimony his motion for an instructed verdict of not guilty, and a jury which found him guilty of arson in the second degree. From an order denying his motion for a new trial, defendant appealed. Affirmed.

[1]Reported in 196 N. W. 936.

*Eloi Bauers* and *John F. Dahl*, for appellant.

*Clifford L. Hilton*, Attorney General, *Floyd B. Olscn*, County Attorney, and *William G. Compton*, Assistant County Attorney, for respondent.

LEES, C.

The grand jury of Hennepin county returned an indictment against defendant charging him with the crime of arson in the first degree. He was tried, found guilty of arson in the second degree, and has appealed from a denial of his motion for a new trial, asserting (1) that the verdict was not justified by the evidence, and (2) that since the trial material evidence has been discovered which might have changed the result, had it been laid before the jury.

Defendant had a lease of a room on the ground floor of a building located at No. 22 Hennepin avenue in the city of Minneapolis, where he conducted a clothing and jewelry store. The floors above were occupied by lodgers. The rear of the store was separated from the front by two cases for clothing set across the room a few feet from the rear wall. The fire occurred in the evening of November 27, 1922. It originated at the base of one of these cases. Defendant and a clerk named Kusick were in the store until a short time before 8 o'clock, when both left to go home. Kusick was a witness for the state. He testified that he left first and was followed by the defendant, who locked the door. At 7:58 the fire department was called to the fire. It was discovered by a man named Schultz, whose place of business was on the opposite side of Hennepin avenue. He called the attention of a man named Sandler to it and he gave the alarm. Sandler was a clerk in a store conducted by one of defendant's competitors in business with whom he was on bad terms. There are some discrepancies in the description of the fire as given by Schultz and Sandler, the former testifying that when he first saw it the flames extended from floor to ceiling, and the latter, that only the base of the case was burning and not until after he gave the alarm was there any fire as high up as the ceiling. Kusick was at a drug store nearby when the firemen arrived. He informed de-

fendant, who had gone to his home some 28 blocks away, that his place of business was on fire. Defendant returned at once, was accused by a deputy fire marshal of having started the fire, and he and Kusick were taken to police headquarters and questioned and subsequently released. The fire marshal took possession of the store and placed a man in charge, who remained there day and night. In the morning of November 28, two officials in the city fire department visited the store to ascertain how the fire originated. They were unable to do so, but their examination was not as thorough as one made in the morning of November 29 by two deputy state fire marshals. They discovered that the clothing in the case which had burned gave off the odor of kerosene. They found two cans on a shelf in the store, one empty and the other partly filled with a liquid which smelled like kerosene and burned with a smoky flame when a small portion was ignited. In with the partially burned clothing, they found a piece of canvas in a tight roll with the edges charred. It had the same odor as the clothing. The canvas was unrolled and laid on a table and a moment later they discovered that it was burning. They were unable to give an explanation for this phenomenon. Chemists who analyzed the liquid in the can found that it would burn; that the flash point and the burning point were substantially the same as that of kerosene; that when distilled the liquid had the volatility of kerosene and left the same oil residue as that found on the piece of canvas. The can bore a label reading as follows: "Caution. This compound may be ignited and caused to burn." and one of the chemists testified that the liquid was composed of kerosene mixed with creosol, which is a crude disinfectant. Defendant and two of his witnesses explained the presence of the can as follows: The clothing was regularly sprayed to keep moths from damaging it, the liquid being used for that purpose. It did not injure the clothing and the odor disappeared within 24 hours. The can had been in the store for a long time and was in plain sight of anyone who came there.

Defendant carried fire insurance on his stock and fixtures in the sum of $13,000, and $15,000 use and occupancy insurance. The policies were written October 31, 1922. An inventory of the

goods and fixtures taken after the fire showed a total valuation of $8,983.62. Defendant claimed a fire loss of $6,694, and $1,500 for loss of use and occupancy. A witness for the state testified that before the fire defendant said in his hearing that unless they caught him with a match in his hand they could do nothing.

The foregoing is a bare outline of the principal facts and circumstances on which the state relied for a conviction. It is earnestly contended in defendant's behalf that the jury was not justified in finding that the fire was incendiary or that defendant's connection with the fire had been established.

In State v. McLarne, 128 Minn. 163, 150 N. W. 787, followed in State v. McCauley, 132 Minn. 225, 156 N. W. 280, it was held that to prove the corpus delicti in arson, it is necessary to show not only that the building burned but that the fire was designedly set by someone, and in State v. Jacobson, 130 Minn. 347, 153 N. W. 845, that circumstantial evidence alone may sufficiently establish the corpus delicti and guilt of the accused. In the instant case the only question is whether the circumstances were such that the jury might properly reach the conclusion that the fire was incendiary and that the accused set it.

The trial court correctly instructed the jury that the circumstances proved must be such as to exclude any other conclusion and permit of no other hypothesis than that of the truth of the charge laid in the indictment before they would be justified in returning a verdict of guilty.

After examining and considering the record and weighing the arguments of counsel, we have reached the conclusion that the trial court did not err in refusing to vacate the verdict. The state's case was not particularly strong, but, considering the place where the fire started, defendant's recent presence in the store, the oily substance found on the partially burned canvas, the odor of kerosene given off by the clothing, the inflammable character of the liquid in the can, the amount of insurance carried, and the alleged statement made by defendant before the fire, and having in mind the degree of proof required in criminal cases and the rule as to circumstantial

evidence in such cases, the jury might find as they did. State v. O'Hagan, 124 Minn. 58, 144 N. W. 410.

The fact that the presence of the can and its contents is satisfactorily explained does not do away with the inference that the liquid was used to start the fire. It was inflammable and defendant must have known that it was if he looked at the label on the can. It was not necessary to purchase kerosene if it was his purpose to set the fire. He had at hand a substitute.

About three months after the fire the owner of the building had the electric wiring inspected because the electric lights would not burn. It was discovered that a wire which carried the circuit into the building had melted at an outlet box in the rear of the store owing to the fact that the fuses, instead of being the weakest point in the wire, had been strongly reinforced, and that this condition could have caused the fire. But there was evidence that the electric lights were in good working order before and immediately after the fire. It is difficult to reconcile this fact with the theory that the fire started because there was a short circuit or a defective connection with the outside wires. Moreover, whether the conditions discovered by the electricians had anything to do with the fire is largely a matter of conjecture. The trial court properly refused to grant a new trial because of the newly discovered evidence.

Order affirmed.