**STATE of Minnesota, Respondent,**

v.

**Scott Michael BLAHOWSKI, Appellant.**

**No. C6-92-1756.**

Court of Appeals of Minnesota.

May 4, 1993.

Review Denied June 22, 1993.

Hubert H. Humphrey, III, Atty. Gen., Thomas J. Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Frederic K. Bruno, Bruno & Gray, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

HARTEN, Judge.

Appellant Scott Michael Blahowski challenges his conviction of the fifth degree controlled substance crime of possession with intent to sell marijuana in violation of Minn.Stat. § 152.025, subd. 2(2) (1990). Blahowski challenges the sufficiency of the evidence that he intended to sell marijuana for remuneration. Blahowski also contends that the state had the burden to prove that he possessed more than a "small amount" of marijuana, which is less than 42.5 grams excluding the weight of any mature stalks pursuant to Minn.Stat. § 152.01, subds. 9 and 16 (1990). We affirm.

## FACTS

At 1:45 a.m. on October 1, 1991, St. Paul Police Officer Rhodes was on patrol in a squad car. He checked the parking lot of a high-rise apartment building on Edgerton Street. Eventually he saw a car containing four people parked on the west side of Edgerton. There were single family homes and duplexes across from the high-rise, but no businesses in the immediate area that the people in the car might be patronizing.

Officer Rhodes previously had received information about drug activity in this general area. His suspicions aroused, he stopped his squad car in an alley, turned off the lights and watched the car.

Officer Rhodes saw a man emerge from the car's front passenger door, walk north on the west side of Edgerton, go behind a house on the corner of the alley and Edgerton, and then return after a very short time and get back in the car's front passenger door. Shortly thereafter, the same man repeated those movements. Officer Rhodes could not see what the people inside the car were doing.

Officer Rhodes called for backup assistance before he approached the car to investigate. Within a minute, Officers Malmberg and McDonald came from the south and parked so that their headlights shone into the car. Officer Rhodes pulled forward, stopped in the alley, and aimed his

headlights at the car. No one exited or approached the car.

The three officers got out of their squad cars and simultaneously walked toward the suspect car. As Officer Rhodes approached the passenger side of the car, the man who had exited the car twice before, later identified as Paul Matheny, again emerged from the right front door and began to walk away. Officer Rhodes called him back. As Matheny got out of the car, Officer Rhodes thought he saw him throw something. A later search disclosed nothing.

Officer Rhodes walked Matheny back to the car. In a pat-down search, Officer Rhodes discovered in Matheny's left jacket pocket a bulky, soft object that Officer Rhodes suspected was a baggy containing marijuana. When Officer Rhodes asked him what it was, Matheny replied that he got it from Blahowski and was supposed to throw it.

Blahowski was seated in the driver's seat of the car. Officer Malmberg checked Blahowski's driving record and learned that his license was revoked. Blahowski was then arrested for driving after revocation. The car was registered in Blahowski's wife's name.

Before having the car towed, the officers inventoried its contents. In the trunk, Officer Rhodes found a clear baggy with more small baggies inside, each of which contained marijuana, and an Ohaus centigram scale.[1] Blahowski was told that the car's interior would be searched.

Officer Malmberg searched Mark Block, one of the back seat passengers, and seized from Block's jacket pocket a vial that apparently contained cocaine. Robert Zimmerman, the other back seat passenger, was searched and released.

To complete the car inventory, Officer Rhodes used his canine partner, Buddy, who is trained in detecting controlled substances. Buddy gave indication that there were drugs under the right front seat. Officer Rhodes' search of that area revealed a White Castle hamburger box containing three small baggies, each, in turn, containing uniform amounts of marijuana, and three $1,000 bank money bands.

Blahowski had more than $1,000 in cash on his person when he was booked at the police station. The money was seized as evidence of Blahowski's intent to sell marijuana. Officer Rhodes and Sergeant Zasada, who interviewed Blahowski at the jail, both testified that the baggies of marijuana found in the trunk and in the hamburger box were comparable and resembled packages for sale. The apparent marijuana seized from the trunk and inside the car was analyzed and determined, to a reasonable scientific certainty, to contain marijuana. The total gross weight of the confiscated marijuana was 21.6 grams.

When interviewed by Sergeant Zasada, Blahowski said he had been at a bar on Payne Avenue at midnight when three men asked him for a ride. He claimed that Paul Matheny took the car keys in order to put something in the trunk. Blahowski also claimed that the car was stopped because one of the men wanted to smoke a "joint" but the police came before he could light up. He denied knowledge of the scale, the marijuana in the trunk and the marijuana on the car floor.

Blahowski identified the three people riding in the car with him as Matheny, Block and Zimmerman. He gave no indication that there was a fifth person in the car. At trial, Block and Zimmerman both testified that there was a fifth person who had been driving the car, but who left and never returned. Block and Zimmerman claimed that the police came just as they started to smoke a "joint."

The trial court admitted evidence and testimony that Blahowski had been arrested and convicted for selling cocaine on July 8, 1988. Blahowski does not challenge the introduction of that evidence.

A jury found Blahowski guilty of the fifth degree controlled substance crime of possession with intent to sell marijuana in violation of Minn.Stat. § 152.025, subd. 2(2) (1990). Blahowski made post-trial motions

---

1. The jury heard testimony that such a scale is commonly used by drug sellers.

for a new trial and to vacate judgment.[2] At a June 30, 1992 sentencing hearing, the trial court denied Blahowski's motions, but stayed execution of a 23–month sentence pending appeal. Blahowski appeals.

## ISSUES

1. Was the evidence sufficient to show Blahowski intended to sell marijuana for remuneration?

2. In order to prove the fifth degree controlled substance crime of possession with intent to sell marijuana, did the state have the burden to prove that Blahowski possessed more than 42.5 grams of marijuana excluding the weight of any mature stalks?

## ANALYSIS

█ 1. Blahowski was convicted of violating Minn.Stat. § 152.025, subd. 2(2) (1990). That statute makes it a fifth degree controlled substance crime to unlawfully possess "one or more mixtures containing marijuana * * * with the intent to sell it, except a small amount of marijuana for no remuneration." *Id.* We find no merit in Blahowski's argument that the evidence was insufficient to show he possessed marijuana with the intent to sell it for remuneration.

> Where there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did.

*State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). Here, there was ample evidence to show beyond a reasonable doubt that Blahowski intended to sell the marijuana for remuneration. Blahowski was apprehended in an area known for drug selling. The police observed suspicious activity while watching the car in which he was present. The police also seized marijuana which appeared to be packaged for sale, a large amount of cash and a type of scale that drug dealers are known to use. Finally, the jury heard that Blahowski previously had been convicted of selling cocaine.

Blahowski points out that there was exculpatory trial evidence. For example, Officer Rhodes testified that Blahowski told him the $1,000 was from an insurance settlement. A bank teller also testified that she cashed Blahowski's check for over $5,000 a few days before Blahowski was arrested. She said such transactions are not unusual and they sometimes involve customers being given money bands. Blahowski also refers to Officer Rhodes' concession at trial that the scale could be used by either buyers or sellers in drug transactions, that marijuana can be bought or sold in plastic bags, and that neither the scale nor any of the plastic bags were tested for fingerprints.

We are not persuaded that the evidence alluded to by Blahowski requires a finding of insufficiency of the evidence. The jury had adequate evidence to convict Blahowski and was entitled to believe the state's version of the facts. *See State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988) (appellate court must assume jury believed state's witnesses and disbelieved contrary evidence).

█ *State v. Hart,* 393 N.W.2d 707, 709 (Minn.App.1986) holds that this court should use a common sense approach in determining whether the "remuneration" element of a crime has been satisfied. Here, there is no evidence Blahowski was sharing "a small amount of marijuana with an acquaintance." *Id.* The evidence that supports finding intent to sell also supports finding intent to sell for remuneration.

█ 2. In order to prove him guilty of the fifth degree controlled substance crime of possession with intent to sell marijuana, Blahowski contends that the state had the burden to prove that he possessed more

---

**2.** Blahowski had a substitution of counsel after the trial prior to bringing his motions for a new trial.

than 42.5 grams of marijuana excluding the weight of any mature stalks.

Minn.Stat. § 152.025 (1990) provides:

Subdivision 1. **Sale crimes.** A person is guilty of controlled substance crime in the fifth degree if:

(1) the person unlawfully sells one or more mixtures containing marijuana * * *, except a small amount of marijuana for no remuneration; * * *

\*     \*     \*     \*     \*     \*

Subd. 2. **Possession and other crimes.** A person is guilty of controlled substance crime in the fifth degree if:

(1) the person unlawfully possesses one or more mixtures containing a controlled substance * * *, except a small amount of marijuana; or

(2) the person unlawfully possesses one or more mixtures containing marijuana * * * with the intent to sell it, except a small amount of marijuana for no remuneration.

A "small amount" of nonresinous marijuana is "42.5 grams or less." Minn.Stat. § 152.01, subd. 16 (1990). "Marijuana" is "all parts of any species of the genus Cannabis," not including "the mature stalks" or "fiber from such stalks." Minn.Stat. § 152.01, subd. 9 (1990).

At trial, the state introduced into evidence 21.6 grams of confiscated marijuana in which a controlled substance analyst discovered the presence of marijuana. The state did not present evidence that the substance was analyzed to determine how much of it, if any, was prepared from mature stalks of marijuana.[3]

Because only a total of 21.6 grams of marijuana was seized and no tests were made to determine if any of the marijuana was from mature parts of the plant, Blahowski argues that the state did not prove that he intended to sell more than a small amount of marijuana. He asserts that Minnesota law does not allow a conviction for possession with intent to sell marijuana unless the state proves possession of more than a small amount of marijuana. Therefore, he maintains that the state failed to prove he violated Minn.Stat. § 152.025, subd. 2(2). We disagree.

Blahowski has misplaced reliance on *State v. Gallus*, 481 N.W.2d 116 (Minn. App.1992), *pet. for rev. denied* (Minn. Mar. 26, 1992).[4] In *Gallus*, the defendants were charged with selling marijuana after the police seized four marijuana plants being cultivated by the defendants in a hidden room in their residence. *Id.* at 117. The combined weight of the four plants was 66.8 grams.[5] *Id.* On appeal, the state argued that "a person [who] cultivates more than 42.5 grams of a substance that has any identifiable marijuana in it" has violated Minn.Stat. § 152.025, subd. 1(1). *Id.* at 118. This court held that the amount of marijuana the person is being charged with cultivating must be more than a small amount and the state must prove the amount does not include mature stalks. *Id.* at 119.

This court said:

**3.** On appeal, Blahowski makes an oblique argument that the state failed to prove whether *any* of the alleged marijuana put into evidence against him was anything but mature stalks. Blahowski did not make this argument during trial, but did mention it in passing in his motion for a new trial. We find it meritless. Officer Malmberg testified he saw the marijuana seized by Officer Rhodes and Officer Malmberg said it was a "green leafy substance," which supports the conclusion that the marijuana contained something other than mature stalks.

**4.** The jury found Blahowski guilty on April 23, 1992, one month after the supreme court denied review of *Gallus* and two months after this court filed *Gallus*. The arguments raised in this appeal by substitute counsel were not raised at the time of trial, although they were raised in the trial court in a motion for a new trial. The state has advised this court that it does not challenge the raising of these issues in this appeal.

**5.** The *Gallus* defendants were charged under the following statutory provision: "[if a] person unlawfully sells one or more mixtures containing marijuana * * *, except a small amount of marijuana for no remuneration," that person is guilty of a fifth degree controlled substance crime. Minn.Stat. § 152.025, subd. 1(1) (1990). Minn.Stat. § 152.01, subd. 15a (1990) provides that "sell" means "to manufacture." Minn.Stat. § 152.01, subd. 7 (1990) provides that "cultivation" is included in the definition of "manufacture."

Minn.Stat. § 152.025, subd. 1(1) specifically states that it is not violated if a person has a "small amount" of "marijuana" for no remuneration. "Marijuana" does not include mature stalks, and a "small amount" is 42.5 grams or less. The definition of marijuana excludes mature stalks even when marijuana is used in a mixture with other substances. * * * [T]he trial court did not err in concluding that Minn.Stat. § 152.025, subd. 1(1), is violated only when marijuana plants weigh more than 42.5 grams, exclusive of the weight of the mature stalks.

*Gallus*, 481 N.W.2d at 118 (emphasis added).

Blahowski contends that the holding of *Gallus* is not confined to where "selling" is comprised of "cultivation," and there is no "remuneration." Blahowski refers to the following language in *Gallus:*

Minn.Stat. § 152.025, subd. 1(1) has a specific provision which excludes the possession of a small amount of marijuana from prosecution.

*Gallus*, 481 N.W.2d at 118. Blahowski alternatively contends that the above-quoted language is an indication that, with or without evidence of remuneration, or, at least, absent evidence of *actual* remuneration, a person cannot be convicted of selling or intending to sell marijuana under section 152.025 unless the person possesses more than a small amount of marijuana. We disagree. We confine *Gallus* to its facts, and those facts show that the defendants were charged based solely on cultivation without an element of remuneration.

Contrary to Blahowski's assertions, we do not read *Gallus* to require a person to possess more than a small amount of marijuana in order to be guilty of possession with intent to sell if the intended sale is for remuneration. Nor do we read *Gallus* to require evidence of a specific intended sale. Where, as here, there is sufficient evidence to show that the defendant intends to sell for remuneration, the state is not required to show a particular intended transaction.

## DECISION

The evidence was sufficient for the jury to find beyond a reasonable doubt that Blahowski intended to sell marijuana for remuneration. The state did not have the burden to prove that Blahowski intended to sell more than a small amount of marijuana.

**Affirmed.**