*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0702**

State of Minnesota,
Respondent,

vs.

Trevon Fuller,
Appellant.

**Filed June 8, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1210711

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

Appellant Trevon Fuller challenges his convictions of fifth-degree sale of marijuana while in possession of a firearm and gross misdemeanor endangerment of a

child, arguing that (1) the district court erred by not entering a judgment of acquittal on the sale offense; (2) appellant was prejudiced by the district court's failure to instruct the jury on an element of the sale offense; (3) the district court erred by refusing to instruct the jury that it could not base a conviction on appellant's confession alone; (4) the state failed to prove beyond a reasonable doubt that appellant is guilty of child endangerment; (5) the state improperly used a preemptory challenge to remove a member of the jury panel based on race; (6) the district court committed prejudicial plain error by improperly instructing the jury on the elements of possession of a firearm; and (7) the prosecutor committed prejudicial misconduct by referring to appellant as a "dope dealer" in closing arguments. We affirm.

**FACTS**

On November 21, 2011, Minneapolis police searched the residence of appellant's girlfriend T.B. pursuant to a search warrant. Upon gaining entry into the home, the officers noticed appellant standing at the top of the stairs on the second floor. A member of the SWAT team, Officer Andrew Stender, went into the upstairs bathroom and saw the toilet backfilling with water. Officer Stender observed a "leafy substance" he "believed" was marijuana in the water. Appellant and T.B. were handcuffed and placed faced down on the living room floor. The officers placed the couple's 10-month-old child on the floor a few feet away from the couch in the living room. A search of appellant's person revealed a small container of 9.4 grams of suspected marijuana.

The officers searched the rest of the residence and discovered (1) a 9 mm handgun under the couch cushion; (2) 16.5 grams of suspected marijuana in T.B.'s purse in a

2

bedroom upstairs; (3) 6.1 grams of suspected marijuana in appellant's jacket in the kitchen; (4) a baggie of 133 grams of suspected marijuana in a backpack located in the kitchen pantry; and (5) a digital scale and some plastic sandwich bags in a kitchen drawer. The suspected samples of marijuana were sent to the Bureau of Criminal Apprehension (BCA) for testing. In accordance with its policy, the BCA only tested the marijuana found in the backpack because its weight met the threshold requirement for a felony charge. A BCA forensic scientist determined that the baggie containing 133 grams of suspected marijuana found in the backpack was indeed marijuana.

Appellant was arrested and taken to the police station where he was questioned by Officer Daniel Willis. This interview was recorded. During the interview, appellant stated that he had been staying at T.B.'s residence for a couple of days. When Officer Willis told appellant that they recovered marijuana from the upper level of the residence and asked him to whom the marijuana in the house belonged, appellant responded that it was his. Appellant estimated that he had "about an ounce or two" and explained that it was for his personal use. Officer Willis asked appellant if he ever sold marijuana. Appellant responded, "I mean, not really but I got friends and sometimes." Appellant stated that he sold "a five sack every now and again." Appellant admitted that the firearm found in the couch belonged to him.

By a third amended complaint, appellant was charged with possession of a large amount of marijuana while possessing a firearm (count I), child endangerment (count II), and sale of marijuana while possessing a firearm (count III). The probable-cause portion

3

of the final amended complaint referred only to the 133 grams of marijuana that was found in the backpack.

At trial, the jury was presented with evidence of the 133 grams of marijuana, the BCA test results, and the remaining items that were obtained from the search. They also heard testimony that the amount of marijuana recovered was consistent with an amount intended for distribution. Appellant did not testify; however, the recording of his interview with Officer Willis was played to the jury. After the state rested its case, appellant moved the district court for a judgment of acquittal as to all three counts pursuant to Minn. R. Crim. P. 26.03, subd. 18. This motion was denied. Appellant did not present any additional evidence or witnesses.

The jury returned guilty verdicts on all three counts. However, with respect to count I, the jury answered "no" in response to the special interrogatory: "Was the amount of marijuana possessed more than 42.5 grams?" Based on that answer, appellant again brought a motion for acquittal on all counts. A judgment of acquittal was entered on count I, and the district court denied appellant's motion as to the remaining counts. Appellant was also denied a downward departure and sentenced to the mandatory 36-month prison term for the fifth-degree sale of marijuana offense. The district court imposed a concurrent 365-day jail term for the child-endangerment offense. This appeal followed.

**D E C I S I O N**

**I.    The district court did not err in denying appellant's motion for judgment of acquittal as to his conviction for possession of marijuana with intent to sell.**

We review a district court's denial of a judgment of acquittal de novo. *See State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013). "A motion for judgment of acquittal is properly denied where the evidence, viewed in the light most favorable to the [s]tate, is sufficient to sustain a conviction." *State v. Simion*, 745 N.W.2d 830, 841 (Minn. 2008). We apply this same standard when reviewing a challenge to the sufficiency of the evidence. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). Therefore, in reviewing a denial of a judgment of acquittal, "we review the evidence to determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010) (quotation omitted). "The jury's verdict will be upheld if, giving due regard to the presumption of innocence and to the state's burden of proof beyond a reasonable doubt, the jury could reasonably have found the defendant guilty." *Id.* (quotation omitted).

Appellant was convicted of violating section 152.025, subdivision 1(a)(1), which provides that a person is guilty of a fifth-degree controlled substance crime if "the person unlawfully sells one or more mixtures containing marijuana . . . , except a small amount of marijuana for no remuneration." Minn. Stat. § 152.025, subd. 1(a)(1) (2010). "Sell" means "to sell, give away, barter, deliver, exchange, distribute or dispose of to another"

5

or to possess with the intent to sell, give away, barter, deliver, exchange, distribute or dispose of to another. Minn. Stat. § 152.01, subd. 15a(1), (3) (2010). "Small amount," as applied to marijuana, is defined in section 152.01, subdivision 16 as an amount equal to 42.5 grams or less. Minn. Stat. § 152.01, subd. 16 (2010).

There is no direct evidence that appellant possessed marijuana with the intent to sell. Appellant's conviction rests upon circumstantial evidence. "A conviction based on circumstantial evidence warrants stricter scrutiny." *State v. Smith*, 619 N.W.2d 766, 769 (Minn. App. 2000), *review denied* (Minn. Jan. 16, 2001). "While the law does not prefer direct evidence to circumstantial evidence, a conviction based on circumstantial evidence requires that the circumstances proved be consistent with an appellant's guilt and inconsistent with any other rational or reasonable hypothesis." *State v. Sam*, 859 N.W.2d 825, 833 (Minn. App. 2015) (citations omitted).

When reviewing the sufficiency of circumstantial evidence, we apply a two-step process. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). Our first task is to identify the circumstances proved, giving deference to the fact-finder and construing the evidence in the light most favorable to the verdict. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2009). Under this step, we assume that the fact-finder rejected the defendant's version of events. *See Al-Naseeri*, 788 N.W.2d at 473. Deference is given to the fact-finder as it is not the reviewing court's role to evaluate the credibility of witnesses. *State v. Hawes*, 801 N.W.2d 659, 670 (Minn. 2011). This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980).

Taken in the light most favorable to the verdict, the evidence established the following circumstances: (1) appellant admitted to possessing the marijuana in the house; (2) appellant stated that he "sometimes" sold weed and that he sold "a five sack every now and again;" (3) in addition to the large amount of marijuana that was found in the backpack, the search revealed three other bags of suspected marijuana totaling 32 grams; (4) Officer Stender observed a leafy substance he believed was marijuana flushed down the toilet; (5) there was a digital scale and plastic baggies in a kitchen drawer which also contained marijuana residue; (6) appellant's jacket, containing marijuana, was also found in the kitchen; (7) appellant admitted to owning the firearm found in the couch; and (8) firearms are commonly associated with the sale of narcotics.

Having established the circumstances proved, the second step requires this court to determine whether the "circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Silvernail*, 831 N.W.2d at 599 (quotation omitted). We conclude that the circumstances proved are consistent with guilt. While the jury found that appellant was not in possession of more than 42.5 grams of marijuana, one can reasonably infer that appellant possessed the remaining 32 grams of marijuana with intent to sell for remuneration.

Appellant's argument that the miscellaneous 32 grams of marijuana is insufficient to uphold his conviction because it was not tested by the BCA is unpersuasive. "[C]ircumstantial evidence and officer testimony may be presented to the jury to attempt to prove the identity of [a] substance." *State v. Olhausen*, 681 N.W.2d 21, 28-29 (Minn. 2004). Here, there was significant circumstantial evidence to prove the identity of the 32

7

grams of suspected marijuana. When told by Officer Willis that the officers discovered marijuana at the residence, appellant admitted that the suspected marijuana was marijuana for his personal use. During trial, there was testimony from four different officers that all of the suspected marijuana smelled and looked like marijuana. These officers testified that they have executed a number of search warrants, spent time in the property inventory rooms, and have training and other experience that made them familiar with the physical appearance and smell of marijuana. Therefore, we conclude that the circumstantial evidence and officer testimony that was presented to the jury was sufficient to prove the identity of the 32 grams of marijuana.

Appellant also contends that his due-process rights were violated because the factual basis in the complaint only mentioned the large amount—133 grams—of marijuana. While this is true, appellant has not met his burden of showing that this "variance deprived [appellant] of . . . the opportunity to prepare a defense to the charge against him." *State v. Gisege*, 561 N.W.2d 152, 159 (Minn. 1997) (quotation omitted). Here, appellant was apprised of the charges against him. Appellant knew that evidence of the 32 grams of marijuana would be presented to the jury. Indeed, throughout the course of the trial, appellant heard testimony from the officers regarding those samples of marijuana. There was testimony relating to the amount, smell, appearance, and location in which the marijuana was found. Moreover, appellant's closing argument directly addressed all of the marijuana recovered and appellant maintained that none of it could be used to convict him. Appellant fails to meet his burden of showing that he was deprived of the opportunity to prepare a defense and that his right to due process was violated.

**II.    Appellant was not prejudiced by the district court's failure to instruct the jury on an element of the sale offense.**

Because appellant did not object to the jury instructions during trial, we review for plain error. *See State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (stating that when a defendant fails to object to jury instructions during trial, this court reviews the issue on appeal for plain error). Under the plain-error test, appellant must show (1) error, (2) that was plain, and (3) that affected the "substantial rights" of appellant. *Id.* If all three prongs are satisfied, then a reviewing court may decide whether to address the error to ensure the "fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted).

**A.    Error**

It is well settled that jury instructions must define the crime charged, and the district court must explain the elements of the offense to the jury. *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002). A defendant is entitled to have all the elements of the offense with which he is charged submitted to the jury, even if evidence relating to an element is uncontroverted. *State v. Carlson*, 268 N.W.2d 553, 560 (Minn. 1978). "[F]ailure to properly instruct the jury on all elements of the offense charged is plain error." *State v. Vance*, 734 N.W.2d 650, 658 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012).

Minn. Stat. § 152.025, subd. 1(a)(1) states:

> A person is guilty of a controlled substance crime in the fifth degree . . . if: (1) the person unlawfully sells one or more mixtures containing marijuana or

tetrahydrocannabinols, *except a small amount of marijuana for no remuneration.*

(Emphasis added). The following instruction was given to the jury:

> The statutes of Minnesota provide that whoever unlawfully sells one or more mixtures containing marijuana is guilty of a crime.
>
> The elements of sale of a controlled substance crime in the fifth degree are:
>
> First, the defendant sold one or more mixtures containing marijuana.
>
> "To sell" means to sell, give away, barter, deliver, exchange, distribute, or dispose of to another; to offer or agree to do the same; to possess with the intent to do the same; or to manufacture. A "mixture" is a preparation, compound, mixture, or substance containing a controlled substance, regardless of its purity.
>
> Second, the defendant knew or believed that the substance the defendant sold was marijuana.
>
> Third, the defendant's act took place on or about November 21, 2011 in the city of Minneapolis in Hennepin County.
>
> If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.

Appellant argues that the district court's jury instructions did not require the jury to find that appellant possessed with intent to sell more than a small amount of marijuana for no remuneration. We agree.

"The test for determining what constitutes a basic element of rather than an exception to a statute has been stated as whether the exception is so incorporated with the

10

clause defining the offense that it becomes in fact a part of the description." *State v. Brechon*, 352 N.W.2d 745, 749 (Minn. 1984) (quotation omitted). In *State v. Gallus*, we determined that "[a]lthough Minn. Stat. 152.025, subd 1(1), contains the word 'except,' the determination of whether the marijuana possessed by a defendant is more than a 'small amount' is part of the definition of the offense." 481 N.W.2d 116, 119 (Minn. App. 1992), *review denied* (Minn. Mar. 26, 1992). Therefore we held that "[p]roof of the weight of the marijuana is a basic element of the crime, the burden of which is on the state." *Id.*

It is clear from section 152.025, subdivision 1(a)(1) that the language "for no remuneration" in the phrase "except a small amount for no remuneration" is also part of the legislature's description of the offense of fifth-degree sale of marijuana. Indeed, the sale of a "small amount" of marijuana for no "remuneration" is a separate offense—a petty misdemeanor under Minn. Stat. § 152.027, subd. 4(a) (2010). Thus, reading the two statutes together makes it evident that a fifth-degree sale cannot be based on the sale of a small amount of marijuana for no remuneration. *See State v. Hart*, 393 N.W.2d 707, 709 (Minn. App. 1986) ("The common sense reading . . . indicates that the legislature intended, by the phrase 'distribution of a small amount of marijuana for no remuneration,' to take the person who shares a small amount of marijuana with an acquaintance out of the felony category, and confines that offense to the category of a petty misdemeanor.").

Including the language "for no remuneration" as an element of the offense allows a defendant to be convicted of the felony offense of fifth-degree sale of marijuana in

11

circumstances where, such as here, appellant only possessed a small amount of marijuana. We have previously made clear that "we do not read *Gallus* to require a person to possess more than a small amount of marijuana in order to be guilty of possession with intent to sell *if the intended sale is for remuneration*." *State v. Blahowski*, 499 N.W.2d 521, 526 (Minn. App. 1993) (emphasis added), *review denied* (Minn. June 22, 1993); *see also State v. Tykwinski*, No. C3-99-1608, 2000 WL 1051919 at *2 (Minn. App. Aug. 1, 2000) (explaining that the intent to receive remuneration for selling marijuana is "one of the elements of possession with intent to sell"); *State v. Weigand*, No. C5-91-2208, 1992 WL 189343 at *2 (Minn. App. Aug. 11, 1992) (holding that the "no remuneration" language is part of the same clause as the "except a small amount" language and therefore "must be considered part of the same element of the offense"). Furthermore, although in a different context, the Minnesota Supreme Court has explained that "[w]hen the legislature . . . includes the absence of a fact in the definition of an offense, the absence of that fact is generally treated as an element of the offense." *State v. Burg*, 648 N.W.2d 673, 678 (Minn. 2002).

For these reasons, we hold that the "no remuneration" language in section 152.025, subdivision 1(a)(1) is an element of the offense that must be proved by the state beyond a reasonable doubt. *See Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn. 1997) ("If the statute is free from all ambiguity, we look only to its plain language. When, however, the literal meaning of the words of a statute would produce an absurd result, we have recognized our obligation to look beyond statutory language to other indicia of legislative intent.").

12

Here, the jury was not instructed that in order to find appellant guilty, it must find that appellant either possessed a large amount of marijuana with the intent to sell or that he possessed a small amount of marijuana with intent to sell for remuneration.[1] Because that element of the offense is necessary to uphold appellant's conviction of sale of marijuana in the fifth degree, its omission was erroneous.

**B.    Plain**

"An error is plain if it is clear and obvious at the time of appeal.  An error is clear or obvious if it contravenes case law, a rule, or a standard of conduct." *State v. Little*, 851 N.W.2d 878, 884 (Minn. 2014) (quotations and citation omitted).  As discussed above, in *Gallus* we held that "except a small amount" was an element of the offense. *Gallus*, 481 N.W.2d at 119.  And a jury must be instructed on all elements of the offense charged. *See Vance*, 734 N.W.2d at 658.  Accordingly, the district court's failure to instruct the jury as to this element of the offense was error that was plain.

With respect to the "no remuneration" language, we acknowledge that there are no published decisions in Minnesota which explicitly conclude that the "no remuneration" language is considered an element of the offense.  However, because we determine that it is an element of the offense, we conclude that the failure to instruct the jury on this element of the offense is error that was also plain. *See id.; see also Burg*, 648 N.W.2d at 680 (concluding that an erroneous jury instruction omitting an element of the offense was

---

[1] It bears mentioning that at the time the jury instructions were given, the state's case rested on appellant's possession of the 133 grams of marijuana—an amount that exceeds the statutory definition of "small amount." *See* Minn. Stat. § 152.01, subd. 16 (2010) ("'Small amount' as applied to marijuana means 42.5 grams or less.").

13

plain error even though there were no published decisions explicitly concluding that the omitted language was an element of the offense); *Carlson*, 268 N.W.2d at 560 (explaining that a defendant is entitled to have all the elements of the charged offense submitted to the jury even if evidence relating to an element is uncontroverted).

### C. Substantial rights

An error is prejudicial where there is a reasonable likelihood that the error had a significant effect on the verdict. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). The omission of an element of a crime in a jury instruction does not automatically necessitate a new trial. *State v. Watkins*, 840 N.W.2d 21, 28 (Minn. 2013). Instead, a reviewing court must conduct a thorough examination of the record to determine whether the omitted element of a charged offense from the jury instruction was "sufficiently prejudicial." *Id.* at 28-29. "The defendant bears the heavy burden of proving that the error was prejudicial." *Milton*, 821 N.W.2d at 809 (quotation omitted).

Appellant has not met his burden. There is overwhelming evidence to prove this element of the offense. Appellant admitted that he "sometimes" sold weed and that he sold a "five sack every now and again." There was a digital scale and plastic baggies found in a kitchen drawer which also contained marijuana residue. Appellant's jacket which contained marijuana was also in the kitchen. Appellant admitted that all of the marijuana in the house belonged to him. Moreover, a firearm belonging to appellant was found in the residence, and the state presented evidence that firearms are commonly associated with the sale of narcotics. Appellant's substantial rights were not prejudiced by the district court's failure to instruct the jury on that element of the offense.

**III.** **The district court did not err in refusing to grant appellant's request to instruct the jury that it could not convict appellant based solely on his confession.**

The refusal to give a requested jury instruction lies within the discretion of the district court and will not be reversed absent an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996).

The district court denied appellant's request to instruct the jury pursuant to Minn. Stat. § 634.03 (2010). Section 634.03 provides:

> A confession of the defendant shall not be sufficient to warrant conviction without evidence that the offense charged has been committed; nor can it be given in evidence against the defendant whether made in the course of judicial proceedings or to a private person, when made under the influence of fear produced by threats.

Minn. Stat. § 634.03. Appellant argues that he cannot be convicted of a crime unless the fact that a crime has actually been committed is established through independent evidence (i.e. corpus delicti). "The corpus delicti is the proof that a crime was committed." *State v. Weber*, 272 Minn. 243, 247, 137 N.W.2d 527, 530 (1965).

We disagree with appellant and conclude that the district court did not abuse its discretion by denying appellant's request. In *State v. Heiges*, the Minnesota Supreme Court explained that Minn. Stat. § 634.03 "does not require that each element of the offense charged be individually corroborated. Instead, Minn. Stat. § 634.03 only requires independent evidence of attending facts or circumstances from which the jury may infer the trustworthiness of the confession." 806 N.W.2d 1, 13 (Minn. 2011) (quotations and citations omitted).

Here, appellant's confession that all the marijuana belonged to him and that he occasionally sold marijuana was corroborated by independent evidence. The officers recovered marijuana, a scale and baggies, appellant's jacket, and a firearm that belonged to appellant. "[O]nce a corpus delicti is established, [a] defendant can be convicted on his own admission." *Weber*, 272 Minn. at 247, 137 N.W.2d at 531. Moreover, proof of the corpus delicti may be based upon circumstantial evidence. *State v. Burnstein*, 158 Minn. 122, 125, 196 N.W. 936, 937 (1924). And, as discussed above, there was sufficient circumstantial evidence of appellant's guilt with respect to the sale offense. The district court did not abuse its discretion.

## IV. The evidence is sufficient to support appellant's conviction of child endangerment.

In considering a claim of insufficient evidence, we conduct a careful and thorough analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they did. *Webb*, 440 N.W.2d at 430. In doing so, we assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Appellant was convicted of child endangerment in violation of Minn. Stat. § 609.378, subd. 1(c) (2010), which provides that "[a] person who intentionally or

recklessly causes a child under 14 years of age to be placed in a situation likely to substantially harm the child's physical health or cause the child's death as a result of the child's access to a loaded firearm is guilty of child endangerment." Appellant argues that the evidence was insufficient to prove that appellant's infant child was endangered as a result of the child's access to a loaded firearm because there was no evidence that the child was "physically capable of getting to the couch, lifting the cushion, and obtaining or using the firearm." We are not persuaded.

The firearm was discovered in a place to which the child had easy access. It was a loaded weapon that did not have a "trigger lock" or safety on. The child was present when the firearm was discovered. The child is an infant under the age of 14. Viewing the evidence in the light most favorable to the verdict, the evidence here was sufficient for the jury to find appellant guilty of child endangerment.

**V.     The district court did not err in determining that the prosecutor's reason for the preemptory strike was not a pretext for purposeful discrimination.**

Appellant argues that the district court committed prejudicial error by denying his *Batson*-racial-bias challenge to the state's preemptory strike to remove S.O., one of the two remaining prospective black jurors. "Generally, each party has a limited number of peremptory challenges in a jury trial." *State v. Diggins*, 836 N.W.2d 349, 354 (Minn. 2013). "Unlike a challenge for cause, a peremptory challenge allows a party to strike a prospective juror without having to explain the reason for the strike." *Id.* But "[t]he use of peremptory challenges to exclude potential jurors is subject to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *State v.*

17

*Pendleton*, 725 N.W.2d 717, 723 (Minn. 2007) (citing *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712 (1986)).

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits excluding a potential juror based solely on race. *Id.* In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986), the Supreme Court established a three-part test "to determine whether a peremptory challenge is motivated by a prohibited discriminatory intent." *State v. Greenleaf*, 591 N.W.2d 488, 500 (Minn. 1999). The defendant must first make a prima facie showing that the state exercised the challenge on the basis of race. *Id.* Once the prima facie showing has been made, the burden shifts to the state to articulate a race-neutral reason for the challenge. *Id.* Finally, if the state is successful in articulating a race-neutral reason, "the trial court must then determine whether there has been purposeful discrimination." *Id.* The *Batson* test is also set forth in Minn. R. Crim. P. 26.02, subd. 7.

### 1. Appellant's prima facie showing

Under the first step of the *Batson* test, the defendant may establish a prima facie case of racial discrimination "by showing that one or more members of a racial group have been peremptorily excluded from the jury and that circumstances of the case raise an inference that the exclusion was based on race." *State v. Stewart*, 514 N.W.2d 559, 563 (Minn. 1994). Here, the district court found, and the parties agree, that appellant made a prima facie showing.

18

## 2.     Race-neutral reasons

The second step of the *Batson* test requires the state to articulate race-neutral reasons for exercising the challenged peremptory strikes. "At this second step, the focus of the inquiry is on the facial validity of the explanation; therefore the prosecutor's reason will be deemed race-neutral unless discriminatory intent is inherent." *State v. Gatson*, 801 N.W.2d 134, 141 (Minn. 2011). A prosecutor may exercise a peremptory challenge "for any reason at all, as long as that reason is related to [the potential juror's] view concerning the outcome of the case to be tried." *Batson*, 476 U.S. at 89, 106 S. Ct. at 1719 (quotation omitted).

The prosecutor informed the court that it struck S.O. because

> He said that he has been the victim of a domestic assault that has gone to prosecution three times. He was in a bar fight where he admitted that he was drunk and the police arrested him and, he says, even legitimately. He also said that he is in training to be a law enforcement officer.
>
> His interactions with the criminal justice system abound, Your Honor, and I am worried that he won't be able to separate those experiences from the testimony here today.

Appellant does not challenge the district court's finding that the state presented a race-neutral reason for striking S.O. and this finding is not clearly erroneous.

## 3.     Purposeful discrimination

Finally, the third *Batson* step requires the district court to determine "whether the reason given was a pretext for purposeful discrimination." *State v. Carridine*, 812 N.W.2d 130, 136 (Minn. 2012). The district court may consider whether the challenged peremptory strike "will result in the disproportionate exclusion of members of a certain

19

race." *Id.* The party challenging the strike must demonstrate that (1) "the proffered race-neutral reason is not the real reason for the strike" and (2) "the real reason was the race of the veniremember." *Angus v. State*, 695 N.W.2d 109, 117 (Minn. 2005). We give the district court's findings on the third step considerable deference, "because the court's finding typically turns largely on credibility." *State v. Taylor*, 650 N.W.2d 190, 202 (Minn. 2002). The totality of the circumstances here supports the district court's finding that the state's reasons for striking S.O. were not pretextual.

Appellant argues that "the reasons articulated by the prosecutor were nonsensical and an obvious pretext for a racially-motivated strike." Generally, a juror or juror's family member's involvement with the legal system can be a legitimate race-neutral reason for the state to exercise a preemptory challenge. *State v. Reiners*, 664 N.W.2d 826, 832 (Minn. 2003). Here, S.O. indicated he had been arrested before and that he was currently in law enforcement training. S.O. also indicated that his former partner had served two years in prison for committing domestic abuse, to which S.O. was the victim. "Peremptory challenges are designed to be used to excuse prospective jurors who can be fair but are otherwise unsatisfactory to the challenging party." *Id.* at 833. While S.O. indicated that he is indifferent towards law enforcement and could remain fair, that does not render the state's reason pretextual. Thus, the district court did not err in its determination that the state's proffered explanation was not merely a pretext for a discriminatory motive. *See id.* at 832.

**VI.**   **Appellant's substantial rights were not affected by the district court's plain error in its jury instruction on the elements of the offense of possession of a firearm.**

Appellant argues that the possession-of-a-firearm jury instruction failed to include the necessary element that it substantially increased the risk of violence.  Appellant did not object to the district court's instruction, so we review for plain error.  *Griller*, 583 N.W.2d at 740.

**A.**   **Error**

Appellant was charged with one count of fifth-degree sale of a controlled substance committed while possessing a firearm.  Minn. Stat. § 152.025, subd. 1(a)(1); Minn. Stat. § 609.11, subds. 5(a), (9) (2010).  Minn. Stat. § 609.11, subdivision 5(a), requires that a person convicted of a felony drug offense be sentenced to not less than three years at the time of the offense, he was in possession of a firearm.  For purposes of that subdivision, the term "had in possession" includes both actual and constructive possession.  *State v. Royster*, 590 N.W.2d 82, 83-84 (Minn. 1999).  In *Royster*, the Minnesota Supreme Court determined that where there is constructive possession of a firearm, the state had to also prove that the defendant's "possession of [the] firearm while committing a predicate felony offense substantially increases the risk of violence, [regardless of] whether or not the [defendant] actually uses the firearm."  *Id*. at 85; *See also Salcido-Perez v. State*, 615 N.W.2d 846, 848 (Minn. App. 2000) (upholding a conviction based on the determination that there was "sufficient evidence to support the finding that appellant had constructive possession of the loaded pistol and that the pistol increased the risk of violence in connection with the drug offense"), *review denied*

21

(Minn. Sept. 13, 2000). The jury instructions given here did not include such a requirement, and the district court gave the following instruction which was taken directly from the Criminal Jury Instruction Guide as provided in 10A *Minnesota Practice* CRIMJIG 20.57 (2006):

> Constructive possession may be inferred when the firearm is in reasonable proximity to the defendant or to the drugs. In deciding whether to draw this inference, you should consider, among other factors, whether the presence of the firearm increased the risk of violence and the degree this risk was increased, the nature, type, and condition of the firearm, its ownership, whether it was loaded, its ease of accessibility, its proximity to the drugs and to the defendant, why the firearm was present, and whether the nature of the offense of controlled substance crime in the [fifth] degree is frequently or typically accompanied by the use of a firearm.

Thus, the failure to instruct the jury that they are required to find that appellant's possession of the firearm substantially increased the risk of violence was error.

### B. Plain

This error was plain because it contravenes existing law as set forth in *Royster*. *See Little*, 851 N.W.2d at 884. And "[a]n instruction is not necessarily insulated from being plain error because it follows the applicable CRIMJIG." *State v. Gunderson*, 812 N.W.2d 156, 162 (Minn. App. 2012).

### C. Substantial rights

Although this was error that was plain, it did not affect appellant's substantial rights. There is sufficient evidence in the record that appellant possessed the firearm and that appellant's possession of the firearm substantially increased the risk of violence. Appellant admitted that the firearm was his; the firearm was loaded and it was not

22

secured by a trigger lock; the firearm was in an easily accessible location; and Officer Kipke testified that firearms are commonly found in connection with controlled substances for protection.

## VII. Appellant's pro se argument

Appellant raises one additional argument in his brief. Appellant appears to argue that the prosecutor committed prejudicial misconduct during closing argument by referring to appellant as a "dope dealer" and a "guy who is selling marijuana" during opening and closing arguments.

We review closing arguments in their entirety to determine whether prosecutorial misconduct occurred. *State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011). "The prosecutor has the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998) (quotation omitted). The prosecutor has "considerable latitude" in making a closing argument, and the argument is not required to be "colorless." *Id.* However, a prosecutor may not argue facts unsupported by the record. *See State v. Ferguson*, 729 N.W.2d 604, 616 (Minn. App. 2007), *review denied* (Minn. June 19, 2007) (holding that it is improper for a prosecutor to make arguments unsupported by the record).

Appellant did not make any objections to this portion of the closing argument at trial. When an appellant does not object to an alleged prosecutorial error at trial, we apply the modified plain-error standard of review. *State v. Ramey*, 721 N.W.2d 294, 302

(Minn. 2006) (stating that the burden shifts to the state to demonstrate that the misconduct did not affect substantial rights).

The prosecutor's passing characterization of appellant as a "dope dealer" was not error. Indeed, this was part of the state's theory of the case, and this inference can be drawn based on the evidence that was presented to the jury. Moreover, it does not rise to the same level of prosecutorial misconduct that we have admonished in other cases. *See, e.g., State v. Duncan*, 608 N.W.2d 551, 556 (Minn. App. 2000) (finding that the prosecutor's references to defendant as a "predator," as well as various other forms of the word, made several times during its closing argument, was intended to improperly inflame the passions or prejudices of the jury). Because we conclude that this was not error, we do not need to analyze the remaining prongs of the modified plain-error test.

**Affirmed.**